THE DRAINAGE COMMISSIONERS OF HAMMOND MUTUAL DRAINAGE DISTRICT, Appellee, *vs.* THE DRAINAGE COMMISSIONERS OF DISTRICT NO. 9 OF THE TOWN OF UNITY, Appellant.

*Opinion filed October 28, 1910.*

1. DRAINAGE—*when one district cannot take possession of another's ditch.* Where a drainage district acquires, by grant, a right of way for its ditch, which it constructs and uses as a necessary part of its system and exercises exclusive jurisdiction and control thereover, the fact that the whole tract of land in which the ditch is located is included within the boundaries of a district subsequently organized does not justify the latter district in ousting the former district of its possession of the ditch and assuming control thereof.

2. EQUITY—*when equity will enjoin threatened acts—irreparable injury.* Where one drainage district, without the consent of the other, is about to take possession of a portion of the latter's main ditch to deepen and widen it, intending to thereafter assume control thereof, which will result in the complete ouster of the district owning the ditch and cause the lands of such district to be overflowed by the stoppage of surface drainage into the ditch, a court of equity will enjoin the threatened acts upon the ground of irreparable injury, even though there may be a remedy at law.

APPEAL from the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding.

W. G. CLOYD, and REED & REED, for appellant.

JAMES L. HICKS, and CHARLES G. ECKHART, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

In September, 1904, the Drainage Commissioners of the Hammond Mutual Drainage District, appellee, filed a bill against the Drainage Commissioners of Drainage District No. 9 of the town of Unity, county of Piatt, appellant, in the circuit court of Piatt county, to enjoin appellant from exercising control and jurisdiction over a portion of

the drainage ditch in the south-east quarter of the south-west quarter of section 13, township 16, north, (Unity township,) range 5, east of the third principal meridian, and from excavating, widening, deepening and repairing such ditch and from trespassing upon the same. Temporary injunction was issued, and a motion to dissolve the same having been denied, the cause was referred to the master in chancery to take the proofs and report the same to the court, which was done. After many continuances of the cause a decree was entered by the court at the February term, 1910, finding in favor of the complainant in the bill and making the injunction perpetual.

The facts having a legitimate bearing upon the questions involved, as disclosed by the proof, are as follows: Some time during the year 1887 certain land owners of the town of Unity and of the town immediately east, in Piatt county, and in the towns of Lowe and Lovington, in Moultrie county, prepared an agreement, to be signed by such land owners, to form a mutual drainage district under section 77 of the Farm Drainage act of 1885. The agreement was in proper form and named therein three of the land owners who should serve as drainage commissioners until the third Tuesday of November, 1888, at which time their successors should be chosen. Among other lands included within this district was the said south-east quarter of the south-west quarter of section 13 in Unity township, then owned by the estate of John Crocker, deceased, and controlled by John H. Crocker as executor of the last will and testament of the said John Crocker, deceased. To this agreement was attached a grant executed by Crocker as such executor, conveying to the district, which was designated in the agreement as Hammond Mutual Drainage District, a right of way of the width of sixty feet through said forty-acre tract for the construction of a ditch through the same to the depth of six feet and a width of twenty feet, which grant was properly acknowledged on November 10, 1887. The

commissioners named in the agreement at once contracted for the construction of the main ditch through the district, beginning at the upper end of said forty-acre tract, about seventy-two rods north of the south line thereof and extending south to the outlet, through the towns of Lowe and Lovington, in Moultrie county. Work was at once commenced by the contractor and construction of the ditch was practically completed at the time this agreement was filed for record in the counties of Piatt and Moultrie, on October 10, 1889. In the meantime, Crocker, as such executor, sold the forty-acre tract above described to Alfred Geiling, and on November 20, 1888, Geiling participated in the selection of commissioners for Hammond Mutual Drainage District, signing his name to the written selection as "Alfred Geiling, successor to J. H. Crocker." On July 6, 1889, a petition was filed with the town clerk of the said town of Unity for the organization of Drainage District No. 9 of said town of Unity. Alfred Geiling signed this petition also. That district was finally organized on July 29, 1889, and as so organized embraced and included, among other lands, the forty-acre tract in question, then owned by Alfred Geiling, although it is claimed by appellee that this tract was not properly included under the petition. After the organization of each of said districts had been completed dissension arose as to which district had jurisdiction over said forty-acre tract, and district No. 9 so planned and located its main ditch that its outlet was to be into the head or upper end of the ditch then constructed by the Hammond district to about seventy-two rods north of the south line of said forty-acre tract. In order to adjust their differences and to avoid the litigation which was threatened, the commissioners of these two districts entered into a written agreement on November 19, 1890, whereby it was mutually agreed between them that the Hammond district should have jurisdiction over and control of the south seventy-two rods of said forty-acre tract and district No. 9

should have jurisdiction over and control of all the remainder of said forty-acre tract, and that for and in consideration of the payment of $480 by district No. 9 to the Hammond Mutual Drainage District, district No. 9 was to be allowed to connect with the head of the ditch of the Hammond Mutual Drainage District on the said forty-acre tract and use said ditch as an outlet to its drainage system. This agreement also provided that it should never be construed as authorizing the commissioners of the Hammond district to levy any assessment upon the lands of district No. 9 or make any claims for repairs or cleaning out the ditch of the Hammond district, it being understood that each party should take care of its own ditches and pay the costs thereof. Subsequent to that time the Hammond district on various occasions cleaned and repaired its ditch up to the upper point thereof, seventy-two rods north of the south line of the said forty-acre tract, and exercised exclusive jurisdiction, up until the filing of the bill herein, over the right of way which had been granted it by Crocker to that point. On two occasions after the making of the agreement between the commissioners of the two districts referred to, and before the filing of the bill herein, district No. 9 contracted with the Hammond district for an outlet through the ditch of the Hammond district for an additional flow of water. During all this time the various owners of said forty-acre tract were assessed by both drainage districts on said tract, which assessments were all paid. At the upper end of the ditch of the Hammond district, as constructed on said forty-acre tract, a lateral drain extended eastward, which was known as the "Stuve and Ponder lateral." This lateral drained the lands belonging to Stuve and Ponder lying east and north of the said forty-acre tract, comprising in all nine hundred and sixty acres. In 1904 district No. 9 contracted with Joseph Lewis to widen, deepen and repair its ditch and that portion of the ditch which had been constructed by the Hammond district in the

said forty-acre tract. Lewis had progressed with his work until he had reached the north end of the ditch as originally constructed by the Hammond district, when the commissioners of the Hammond district filed this bill and secured the temporary injunction against Lewis and the commissioners of district No. 9.

The bill alleges that the commissioners of district No. 9, and Lewis, are threatening to go upon the lands embraced in the Hammond district without the consent of said district or its commissioners and against its protest, and to take possession of the ditch thereon and make repairs on the same and to exercise exclusive jurisdiction and control over a portion of the ditch of the Hammond district, and that the improvement contemplated by the commissioners of district No. 9 will require the appropriation of the right of way of the Hammond district, and of the ditch thereon, for a distance of seventy-two rods; that no steps have been taken by district No. 9 to procure a right of way for the construction of the ditch proposed, either by agreement or condemnation; that the making of the improvement will cause the earth to be excavated and placed upon the right of way of the Hammond district in high ridges, which will hinder and delay the water of the lands of the district from flowing into said ditch and interfere with the drainage of the lands of said district, and will also tear up and destroy the outlets into said ditch along the line of the proposed improvement; that it will cause irreparable injury to the system of drainage of said district and to said right of way and to the easement of the Hammond district in said right of way; that the Hammond district has no adequate remedy at law, and prays for injunction. Lewis answered, admitting his contract to make the improvement, as alleged in the bill. The commissioners of district No. 9 answered, neither admitting nor denying the incorporation of the Hammond district; denying that the Hammond district procured the right of way for seventy-two rods, or any

other distance, over said forty-acre tract, and alleging that any work done by the Hammond district was without right or authority. The answer admitted that at the time of the filing of the bill district No. 9 had determined upon the improvement of the ditch, as alleged in the bill, including the whole ditch on said forty-acre tract, but denied that the Hammond Mutual Drainage District had any jurisdiction or easement over any part of said forty-acre tract, and alleged that said seventy-two rods of ditch located on the south part of said forty-acre tract belonged to district No. 9, and that it had sole jurisdiction and control of that part of the ditch. The answer further denied that the court, sitting as a court of equity, had jurisdiction of the subject matter of the bill of complaint or had any jurisdiction to hear and determine the cause, but that the plaintiff in the bill had a full, ample and complete remedy at law.

The question here presented seems to have arisen out of the dispute as to which district has jurisdiction over the said forty-acre tract and of which district the same is properly a part, and the arguments of counsel are chiefly devoted to that proposition. The matters involved in this controversy do not require a determination of that question. It appears from the record that a considerable part of the lands comprising the Hammond district are composed of the east half of section 13 in Unity township and the whole of section 18 in the township immediately east, which lie east and north of the forty-acre tract in question. Whether or not this forty-acre tract properly comprises a part of the Hammond district is immaterial. It is apparent that it is necessary for the proper working and drainage of that district that its ditch extend partially across this tract, in order to connect with and furnish an outlet for the lateral known as the "Stuve and Ponder lateral," which drains the lands in said section 18 and the east half of said section 13. It is conclusively shown from the proofs that the Hammond district procured a right of way across the said

246—34

forty-acre tract for the purpose of constructing the upper
end of its main ditch and furnishing an outlet for the said
lateral. While assessments have been paid by the owner of
this tract to district No. 9 ever since its organization as
well as to the Hammond district, it is uncontradicted that
the Hammond district, from the time of the construction of
the portion of the ditch in question until the filing of this
bill, has been in the sole and exclusive possession of that
portion of the ditch and of the right of way within which
it lies. District No. 9, so far as the record discloses, has
never made any attempt to secure a right of way over this
forty-acre tract for the purpose of constructing a ditch, has
never constructed a ditch over it, and has never taken any
action in reference to that portion of the ditch in dispute
prior to the making of the contract with Lewis for its wid-
ening and excavation, except to contract with the Ham-
mond district, on various occasions, for an outlet and for
the privilege of emptying into the same an additional flow
of water. On the other hand, it has stood by and allowed
the Hammond district not only to construct that ditch, but
to keep the same in repair.

Much has been said by counsel as to the validity of the
contract entered into between the commissioners of the said
drainage districts on November 19, 1890, counsel for ap-
pellant contending that said contract was *ultra vires* and
void, and counsel for appellee insisting that it was within
the powers of the commissioners to make and is valid and
binding. We do not deem it necessary for a proper deter-
mination of the questions involved here to pass upon the
validity of this contract. It is apparent from the proof
that the Hammond district had secured a right of way
through said forty-acre tract for the construction of its
ditch; that that ditch was a necessary part of its drainage
system, and that it has always been in the exclusive pos-
session and control of that portion of the ditch. Under
these circumstances it is immaterial whether or not the

forty-acre tract through which this right of way was secured and this ditch constructed is properly a part of the Hammond district or is a part of some other drainage district. The mere fact that said forty-acre tract as a whole may be a part of district No. 9 would not authorize that district to arbitrarily oust the Hammond district from its ditch and its easement and to assume control and jurisdiction over the same.

Appellant contends that the trial court erred in taking jurisdiction of the case for the reason that appellee had an adequate remedy at law, and urges that equity will not enjoin a threatened trespass. The answer of appellant admits, and the proof shows, that it claims to have exclusive jurisdiction over the portion of the ditch in controversy and that it intends to take and hold possession of the same and exercise exclusive jurisdiction over it. If. this action on the part of appellant had not been resisted it would have resulted in a complete ouster of appellee from the possession and control of its easement over the forty-acre tract and that part of its ditch located thereon. Appellant proposed not only to proceed with the improvement for which it had then contracted with Lewis to make, but to continue in possession of the ditch and to perform such acts in reference to it in the future as it saw fit. So far as this record discloses, the only service this portion of the ditch afforded appellant was that of an outlet for the waters flowing from its district. The Hammond district used it as an integral part of its main ditch to receive the waters from the surface overflow throughout its length and the waters from the Stuve and Ponder lateral. The proof is that appellant had completed the proposed improvement to within a few feet of the connection of the Stuve and Ponder lateral with the main ditch. The work was being done by means of a dredge boat, and it was proposed to excavate the bottom of the ditch to a depth of about from fourteen to eighteen inches and to increase its width at the bottom about two feet. The

dirt thus excavated was being piled on the banks of the ditch in a ridge of from twelve to eighteen inches in height. The proof on the part of complainant tended to show that this method of excavation would interfere with the drainage from the Stuve and Ponder lateral, and would also prevent the surface water from the Hammond district flowing into and being carried away by the main ditch. By its proposed action appellant threatened to inflict upon appellee a permanent and continuing injury. The easement of the Hammond district over the said forty-acre tract was held for the benefit of the land owners of the district, and any unlawful interference with it calculated to inflict irreparable injury upon the district, or any portion of it, presents a clear case for equitable relief.

We cannot agree with the contention of appellant that the evidence wholly fails to show any irreparable injury or any injury whatever. In *Wahle* v. *Reinbach*, 76 Ill. 322, we quoted with approval from section 770 of Wood on the Law of Nuisances as to what is meant by irreparable injury, as follows (p. 326): "By irreparable injury is not meant such injury as is beyond the possibility of repair or beyond possible compensation in damages, nor necessarily great injury or great damage, but that species of injury, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other, and, because it is so large on the one hand or so small on the other, is of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law." The proof tended to show that the proposed action of the appellant in widening and deepening this ditch and depositing the dirt upon the banks would result in causing an overflow of a considerable part of the territory embraced in the district of appellee, and we are of opinion that the chancellor was warranted in finding that the proposed action of appellant would result in irreparable injury to appellee. While it is true that appellee would have a remedy at law had appellant

been allowed to persist in its design, that remedy would not be as prompt as the emergency required and would not afford adequate relief. By delay the lands within the Hammond district might be submerged and the crops thereon destroyed to such an extent that pecuniary compensation would not afford relief.

There being no error in the record the decree of the circuit court is affirmed.

*Decree affirmed.*