·(No. 10960.)

THE PEOPLE *ex rel.* County Collector of Shelby County, Appellee, *vs.* JOE CURRY, Appellant.

*Opinion filed December 21, 1916.*

DRAINAGE—*authority of commissioners of a drainage district created by mutual agreement is limited to terms of the agreement.* Section 77 of the Farm Drainage act, providing that the powers and duties of commissioners of a district created by mutual agreement shall be the same as provided for other districts, was not meant to destroy the force and effect of the agreement entered into or to give the commissioners authority to proceed in any other manner or to make any other and different improvement than is specified in the agreement.

APPEAL from the County Court of Shelby county; the Hon. A. J. STEIDLEY, Judge, presiding.

S. S. CLAPPER, and GEORGE B. RHOADS, for appellant.

W. E. LOWE, State's Attorney, (J. C. WILLARD, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The county collector made application in the county court of Shelby county for judgment and order of sale against the property of Joe Curry for a delinquent drainage assessment of Mutual Drainage District No. 1 of town of Flat Branch. This drainage district was formed under section 77 of the act commonly known as the Farm Drainage act. On November 18, 1893, a written agreement was entered into by the owners of the lands to be included in the district, and the same was duly signed, acknowledged and recorded in the drainage record. By this agreement the general character of the work to be done was provided for, as follows: "The general character of the work to be done shall be the cleaning, enlarging and improving of the open ditches in said district so as to afford ample facilities for the adequate drainage of all the lands included in said district and the keeping of the said open ditches in necessary repair." The agreement further provided that "the amount of taxes to be levied shall be limited in amount to such sum as may be deemed adequate for the payment of the work, as aforesaid, contemplated and provided to be done, together with such estimate of contingent expenses as may be deemed necessary to add thereto." The agreement recited that the owners of the lands described had theretofore by voluntary action constructed ditches and drains which formed a continuous line and branches having a common outlet, and these are the ditches referred to in that part of the agreement above quoted. A plat of the district upon which the ditches were indicated, a profile and report of the character of the work necessary to be done, and an estimate of the cost thereof, were attached to the agreement

and expressly made a part thereof. The lands included within the district were situated in six different sections, and the main open ditch was of considerable size and length. In the year 1913 the commissioners of the district determined to change the system of drainage from open ditches to tile drains, and passed a resolution providing for a tile drain, varying in diameter from 20 to 24 inches, to take the place of the open ditch. This drain was to be placed for a part of the way in the open ditch and for a part of the way from three to five rods distant from the open ditch. The estimated cost of the improvement was $4309.50. An assessment was levied to pay for the improvement, the work was let and the new tile drain put in, and appellant's lands were returned as delinquent. It was for the amount of this assessment against appellant's lands that the county collector made application for judgment and order of sale.

Various objections were made to the application for judgment and order of sale and all of them are relied upon here. It will be necessary for us to notice but one of them. The third objection was that the district was formed by an agreement in writing which specified the purposes of the district and the general character of the work to be done, and the commissioners were not given authority by this agreement to levy special assessments for the construction of tile drains or to change open ditches into closed ditches.

Section 77 of the Farm Drainage act, under which this district was formed, is as follows: "Owners of land which requires combined drainage may form drainage districts, by mutual agreement to include lands of their own only, by an instrument of writing duly signed and acknowledged, and recorded in the drainage record. This agreement may include the location and character of the work to be done; the adjustment of damages; the classification, amount of taxes to be levied; how the work shall be done, or so much of these or more as may be agreed upon, and to this extent shall be as valid as though formed in the mode hereinbefore

provided, and the powers and duties of the commissioners thereafter shall be the same as prescribed for other districts and they shall commence acting at the point reached by the aforesaid agreement: *Provided,* that this agreement may include the selection of three drainage commissioners from their own number, or from others, and their terms of office shall be until the third Tuesday of the following November, or for this term and for one year in addition, as may be agreed at the time of their appointment and at the annual meetings thereafter, a majority of the land owners may choose three commissioners to serve one year by signing a certificate to that effect, or a majority may, in writing, discontinue the voluntary district, and thereafter it shall be under such commissioners as is herein provided for other districts of this class. Such writings shall be recorded on the drainage record. The powers and duties of the commissioners of a district by mutual agreement, and the mode and effect of special assessments, shall be the same as provided for other districts."

It is contended by appellee that under the provisions of this section, after a district has once been formed by mutual agreement it becomes amenable to all the provisions of the Farm Drainage act, and the commissioners are warranted in taking any action that the commissioners of any other district formed under the provisions of the Farm Drainage act have authority to take. As we understand the argument of appellant he takes two positions: (1) That the authority of commissioners of a district by mutual agreement is limited by the terms of the agreement; and (2) that if that is not true and the general provisions of the Farm Drainage act apply to such a district, the commissioners did not proceed properly under the provisions of that act. It will not be necessary to note the second or alternative contention.

It will be noted that said section 77 does contain the provision, "the powers and duties of the commissioners thereafter shall be the same as prescribed for other districts

and they shall commence acting at the point reached by the aforesaid agreement," and also, "the powers and duties of the commissioners of a district by mutual agreement, and the mode and effect of special assessments, shall be the same as provided for other districts." This language was not meant to destroy the force and effect of the agreement entered into or to give the commissioners power and authority to proceed in any other manner than that provided by the agreement. As long as the district remains one by mutual agreement the terms of the agreement must govern. The provisions of the section just indicated simply specify what the powers and duties of the commissioners are under the agreement. This is made evident by another provision of the section, which is, that a majority of the land owners "may, in writing, discontinue the voluntary district, and thereafter it shall be under such commissioners as is herein provided for other districts of this class." If at any time the agreement becomes inadequate for the needs of the district a majority of the land owners may discontinue the voluntary district, and thereafter it shall become such a district as the appellee contends it is at present,—a district where any necessary improvement for the proper drainage of the lands may be made.

By the agreement forming this district it was expressly stated that the character of the work should be the cleaning, enlarging and improving of the ditches then existing on the lands included within the district. The commissioners cannot depart from the terms of this agreement and make other and different improvements. Their action in providing for the construction of, and in constructing, the improvement in question was without authority and void.

The judgment of the county court is reversed and the cause is remanded, with directions to sustain this objection.

*Reversed and remanded, with directions.*