(No. 28415.—

THE PEOPLE *ex rel.* Cloyd D. Fisher, County Collector, Appellee, *vs.* THE BALTIMORE & OHIO RAILROAD COMPANY, Appellant.

*Opinion filed May 23, 1945.*

Frank J. Goebel, of Cincinnati, Ohio, and Hawbaker & Sievers, (Elim J. Hawbaker, of counsel,) both of Monticello, for appellant.

Carl I. Glasgow, State's Attorney, of Monticello, (Robert F. White, of Sullivan, of counsel,) for appellee.

Dobbins, Dobbins & Thomas, of Champaign, and Craig Van Meter, and Fred H. Kelly, both of Mattoon, *amici curiae*.

Mr. Justice Gunn delivered the opinion of the court:

The collector of Piatt county made application in the county court for judgment for delinquent taxes for 1941. Among those listed as delinquent in payment of taxes was appellant, the Baltimore & Ohio Railroad Company and its subsidiary, for nonpayment of both general taxes and drainage taxes. It paid one hundred per cent of its general taxes, part, only, being under protest. It paid

none of the drainage taxes under protest, and filed objections to part of the general tax and all of the drainage special assessment. There has been no appeal from the judgment of the county court in its ruling upon general taxes, and consequently this appeal only involves the judgment rendered against appellant for nonpayment of special assessments levied for the improvement of the Hammond Mutual Drainage District of Piatt and Moultrie counties.

Appellant filed some fifteen objections, and appellee made a motion to dismiss all of the objections and for the entry of judgment against appellant because no part of the special assessment, for which judgment was sought, had been paid under protest. The court denied this motion. All of the objections of appellant, some fifteen in number, to the application for judgment were, upon motion of appellee, stricken by the court, and judgment entered against appellant for the full amount of the special assessment, together with interest and costs.

The appellee contends the payment of seventy-five per cent of the amount of the special assessment under the provision of section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1943, chap. 120, par. 675,) was jurisdictional, and therefore appellant has no right to question the rulings of the trial court in striking the objections made to the validity of the assessment. It has been frequently held that there is a substantial difference between a tax and a special assessment. (*County of McLean* v. *City of Bloomington,* 106 Ill. 209; *DeClercq* v. *Barber Asphalt Paving Co.* 167 Ill. 215; *Carlyle* v. *Bartels,* 315 Ill. 271.) The foundation for the distinction is laid down in Cooley on Taxation, 2d ed., 616: "The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand,

are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it."

In *People ex rel. Smith* v. *Brewer Estate,* 362 Ill. 88, we held that the term "taxes," as used in section 162 of the Revenue Act, as amended in 1933, and prior to the adoption of the Revenue Act of 1939, did not apply to special assessments, and that section did not require the payment of seventy-five per cent of the amount of the special assessment to entitle the objector to resist the entering of judgment for delinquent assessments. Appellee says that the change in the statute renders this decision inapplicable. Prior to 1939, and at the time the *Brewer* decision was rendered, section 162 provided: "If any person shall desire to object * * * to all or any part of any one or more of the taxes levied by the various taxing authorities which form the aggregate of all taxes levied, * * * he shall pay at least seventy-five per cent of the same under protest, * * *." Section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1943, chap. 120, par. 675,) provides: "If any person shall desire to object * * * to all or any part of a real property tax for any year, for any reason other than that the real estate is not subject to taxation, he shall first pay at least 75 per cent of the tax."

We are unable to see any substantial distinction between "any part of any one or more of the taxes levied," on a piece or parcel of land, and "any part of a real property tax." The distinguishing feature between the two sections lies in the words "for any reason other than that the real estate is not subject to taxation." This language is not in the prior statute, and, very obviously, it means that the owner of land which is not subject to any taxation

at all is not required to pay any amount under protest in order to object to a tax. We think the distinction claimed is without merit.

It is also contended that our decision in *People* v. *Taylorville Sanitary Dist.* 371 Ill. 280, has, in effect, overruled the *Brewer case*. Counsel misapprehend the holding in the *Taylorville case*. What was involved in that case was the equality or priority of liens of general taxes and special assessments, and it had nothing to do with the construction of the procedure for the filing of objections to taxes. The case did not involve tax objections, or the method of filing the same, but the references to the Revenue Act were solely for the purpose of deciding the general proposition of law as to whether one species of taxes had priority over another. A judicial opinion must be read as applicable only to the facts involved and is authority for what is actually decided in the case, (*City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506; *White* v. *Seitz*, 342 Ill. 266,) and not for other questions to which the language has no application.

Appellant filed a number of objections to the validity of the drainage tax. There were fifteen in number. It is not necessary to do more than classify the nature of these objections. The first class indicates that the railroad company never was included in or a part of the drainage district in question, and never later became a part of it; second, that the proceedings failed to show that a district had been created under the particular provision of the drainage act; and third, that the assessment was never legally made by the district, and the assessment against appellant's land was excessive. We deduce such to be the effect of the objections, although the arguments of counsel take a much broader range. All objections made by appellant were stricken. Attached to the objections was the contract under which the Hammond Mutual Drainage District of the counties of Piatt and Moultrie was organized.

It appears that the drainage district in question was organized under section 77 of the Farm Drainage Act. (Ill. Rev. Stat. 1943, chap. 42, par. 162.) Sections 1 to 70 of the Farm Drainage Act provide for a complete and comprehensive system of farm drainage, and the method of organization by petition, description of territory, character of drain, etc. By section 77, an alternative method of organizing a district is provided, where it is done by mutual agreement of the landowners and not by court action. It is provided, in effect, that the owners of land which require combined drainage may form a district by mutual agreement to include lands of their own *only,* by an instrument in writing and duly signed and acknowledged and recorded in the drainage record. The contract may include the location and character of the work, the adjustment of damages, the classification and amount of taxes to be levied, and how the work is to be done; and such agreement, when executed, creates a drainage district to the same extent as though the district had been organized by the regular means prescribed in the preceding sections of the statute.

The agreement of the landowners in the Hammond Mutual Drainage District is attached to the objections and made a part thereof, and the motion to strike said objections admitted the truth of the matters set forth therein. The contract in question shows upon its face that it constituted a valid mutual drainage district, and it was so held to be a valid district in *Comrs. of Hammond Mutual Drainage Dist.* v. *Drainage Comrs. of District No. 9,* 246 Ill. 526.

Section 77 of the Farm Drainage Act was construed in *People ex rel. County Collector* v. *Curry,* 276 Ill. 324, and, in effect, it was held that said section was intended to give the commissioners power and authority to proceed in accordance with the written agreement and not otherwise, and that as long as the district remained one of

mutual agreement the terms of the agreement must govern. In that same case it was also held that the phrase "the powers and duties of the commissioners of a district by mutual agreement, and the mode and effect of special assessments, shall be the same as provided for other districts," was only effective after the majority of the landowners, in writing, voted to discontinue the voluntary district, the court saying: "If at any time the agreement becomes inadequate for the needs of the district a majority of the land owners may discontinue the voluntary district, and thereafter it shall become such a district, * * * where any necessary improvement for the proper drainage of the lands may be made." It is also to be noted that the statute provides that the agreement constituting the district shall include "lands of their own only." This case is decisive, and it is to be noted that the objections in the case, which went to the district's power to do work not included in the agreement, were against taxes held to be without authority and void.

Under these decisions, the Hammond Mutual Drainage District consisted of the territory owned by the signers of that agreement. Neither the railroad company nor any of its successors was a party to that agreement, and consequently its land was not within the district, and not taxable by the district for drainage purposes.

While the objections of appellant are somewhat ambiguously drawn, they clearly present to the court the question whether land not included in a drainage district can be assessed by a drainage district, and whether, upon application for judgment, the point can be considered by the court. It is elementary to entering a valid judgment that the court must have jurisdiction of the subject matter and of the parties. To have jurisdiction of the subject matter of this lawsuit is to have jurisdiction of the land in the district. Land without the district is not within the jurisdiction of the court.

Appellee raises the familiar point that the legality of the district cannot be raised upon objection to taxes. It requires no citation of authority to establish this proposition, as it has been many times sustained by this court. The authorities cited by appellee purporting to bar appellant from making the objection that its land is not within the district do not reach this point. The case of *Evans* v. *Lewis,* 121 Ill. 478, was one in which the boundaries of the district had been extended under provisions of the statute, and the validity of this extension was sought to be raised by a bill in equity. In *Shanley* v. *People ex rel. Goedtner,* 225 Ill. 579, the validity of the order of the commissioners attaching land to the district under the provisions of the statute was questioned on an application for judgment for taxes. And in *People ex rel. Selby* v. *Dyer,* 205 Ill. 575, the location of the territory of a voluntary district under section 76 of the Farm Drainage Act was improperly raised on tax objections. It is perfectly obvious that in each of these cases the manner of the organization or the validity of the district was attempted to be questioned in a collateral proceeding. There was a remedy provided by the statute for testing the validity of each of these proceedings and, whether utilized or not, it concluded the matter in a collateral proceeding.

When the district now before us was organized appellant was not a party to its organization. To become a party thereto it was necessary to sign an agreement, and it is admitted it did not sign the agreement. It was therefore no part of the drainage district. Even had it so desired it could not question the district at that time, because it was not included in it. The matter as it now appears before the court still discloses that its land is no part of the district. Appellee leaves the inference in its brief that it might be a part of the district by annexation proceedings, or by voluntarily connecting with it, but the objectors disclose they have presented the entire drainage record to

the court, and if such proceedings had existed they would be shown by the record and can only be shown by the record. No such proceedings have been shown. (*People ex rel. Mark* v. *Hartquist,* 311 Ill. 127; *People ex rel. Pfeiffer* v. *Morris,* 365 Ill. 470; *People ex rel. Toman* v. *Chicago Heights Terminal Transfer Railroad Co.* 375 Ill. 590; *People ex rel. Reich* v. *McCoy,* 387 Ill. 288.) It has been held commissioners of a drainage district cannot, without express statutory authority, perform their functions outside the boundaries of the district; that such acts are void and may be collaterally attacked. (*People ex rel. Matter* v. *Larsen,* 282 Ill. 501; *People ex rel. Olmsted* v. *Prather,* 322 Ill. 280.) Certainly, acts of commissioners levying an assessment on property outside the district are as much a departure from the authority given the commissioners as to make additional drains, which was held void in *People* v. *Curry,* 276 Ill. 324. The commissioners of Hammond Mutual Drainage District had no more authority to assess the property of appellant to improve the district than they would have to assess some of appellant's property in the neighboring State of Indiana.

The court was wholly without jurisdiction, because the record discloses to the court that the property sought to be assessed was not within the district. As late as the case of *People ex rel. Anderson* v. *Chicago and Eastern Illinois Railway Co.* 386 Ill. 239, we have held that where a jurisdictional defect exists, a judgment is void, and the question may be raised upon objection to entry of judgment for delinquent taxes. The appellant was not questioning the validity of the organization of the drainage district or of any of its proceedings affecting lands within its territory, but was simply attempting to show it was not subject to the jurisdiction of the district, which is a far different matter from questioning the validity of its organization. The facts admitted by appellee's motion to strike disclose that the property of appellant was not within

the jurisdiction of the drainage district and was not subject to an assessment levied by it, and hence appellant was entitled to object to any such assessment. Because the assessment against this property was wholly void it becomes unnecessary to pass upon the other objections.

The judgment of the county court of Piatt county is reversed and the cause remanded, with directions to sustain the objections.

*Reversed and remanded, with directions.*