Max EDLIN, Plaintiff-Appellee,

v.

FIREMEN'S INSURANCE COMPANY et al., Defendants-Appellants.

No. 11248.

United States Court of Appeals Seventh Circuit.

July 25, 1955.

Rehearing Denied Aug. 26, 1955.

Certiorari Denied Nov. 21, 1955.

See 76 S.Ct. 179

Donald N. Clausen, Clausen, Hirsh & Miller, Chicago, Ill., Miller, Westervelt, Johnson & Thomason, Peoria, Ill., John P. Gorman, Chicago, Ill., Eugene R. Johnson, Peoria, Ill., for appellants.

John E. Cassidy, Peoria, Ill., John F. Sloan, Jr., John E. Cassidy, Jr., Peoria, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Seven defendant fire insurance companies resisted plaintiff's claim, under seven policies, for loss by fire, occurring November 28, 1952, to his Peoria, Illinois store's contents and merchandise. No claim was made for damage to plaintiff's building. For their principal defense, and reason for denying all liability to plaintiff, these insurers contended he willfully and maliciously set fire to his property and was precluded from recovery since his sworn proofs of loss, delivered to defendants January 16, 1953, recited that the cause of fire was unknown to plaintiff whereas he allegedly knew it to be an incendiary fire. From a judgment, entered February 12, 1954, entered on a jury's verdict for plaintiff aggregating $34,389.57, defendants have appealed. Rulings on evidence, refusal to grant defense motion for entry of judgment notwithstanding the verdict, or, in the alternative for a new trial are now asserted as reversible errors requiring our mandate for another trial.

After studying this lengthy record and assaying defendants' various points, it is clear that their prime basis for reversal pivots on an evidentiary question. Absent this question and its ramifications, and defendants' appeal would collapse at the outset.

These insurers defended below on the theory that Edlin, plaintiff-insured,

caused his store to be burned. Defendants adduced, what they contend, was circumstantial evidence of arson. The trial judge, we think, correctly rejected defendants' offer of proof about condemnation proceedings involving Edlin's store. That offer was tendered on the theory that such evidence manifested motive. Or as defendants' summarize their position (appellants' brief, 39–40):

"If the insurers in the case at bar had been allowed to offer the evidence of the condemnation proceedings, they would have established that at the time of the fire, Edlin stood to receive a large sum for the building containing the store, plus the proceeds of the building policies. If the jury had such evidence before it, they might well have concluded that Edlin found it far more desirable to have the insurance money, rather than the store and its contents * * *. The issue was one of motive * * * the jury should have before it, in passing on the issue of motive, the evidence that would have established that by the occurrence of a fire, Edlin could make a double collection, and pocket a 100% windfall."

We quote from defendants' brief because that passage cogently epitomizes their thesis and uses their own words to demonstrate the fallacious position they adopted. It is only necessary to add one other aspect, which defendants insist aggravated the alleged error of rejecting their evidence, and that is the trial judge's reception of evidence by Edlin tending to show absence of incendiarism.

Before disposing of defendant's argument on this aspect of their appeal, we take cognizance of their statement (defendants' brief, p. 21):

"We are not attacking the verdict of the jury on the basis of the limited evidence before it, but contend that if the vital evidence offered and rejected had been before the jury, a different conclusion might have been reached."

Not only does the vitalness of that evidence escape us, even in face of allegedly "highly suspicious circumstances pointing to an incendiary fire," but defendants' patently conjectural reasoning alone is standing refutation of their contentions. It must be remembered that defendants have expanded and magnified their entire argument concerning evidence of condemnation from this portion of Edlin's cross-examination occurring when defense counsel was pursuing him, in the jury's presence, for reasons why certain photographs of his structure were taken (Tr. 146):

"Q. Why did you take these?

"Mr. Cassidy, Sr. (Plaintiff's counsel): Object, incompetent, improper.

"Mr. Gorman (defense counsel): They know why they were taken.

"Mr. Cassidy: I know why.

"The Court: I don't.

"Mr. Cassidy, Sr.: They were taken in connection with a housing suit, and they know it . . . .

"A. They were taken in conjunction in the condemnation proceedings against my property.

"Q. There were condemnation proceedings pending against your property?

"Mr. Cassidy, Sr.: Object.

"The Court: Objection sustained. I don't think it is material to this case at all. This was a construction of this bridge across the river, was it, and they were going to condemn it?

"Mr. Gorman: We submit this condemnation suit is material, and we will be glad to argue it outside of the presence of the jury."

At that juncture the district judge ruled the condemnation suit was immaterial to the issues then before him, saying " * * * I am not going to try a condemnation proceeding;" and again when addressing counsel:

"The Court: I don't see how you are going to cover up anything, either of you. This land was being condemned, but that has nothing to do with this.

"Perhaps I am going too far, but that has nothing to do with the evidence in this case. I am not trying to conceal anything.

"Mr. Gorman: We would like to show *the entire details*.

"The Court: We don't want to try a condemnation suit." (Italics supplied.)

After completing his cross-examination, save for the following, of plaintiff, defense counsel then announced this offer of proof (Tr. 151):

"With reference to the condemnation proceedings that were pending at the time of this fire, we wish to prove the date that the petition was filed, the time that this witness, Max Edlin, first had knowledge of the possibility of condemnation, the negotiations that were made by Max Edlin for payment of compensation for his property, the fact that this suit was pending at the time, that it was later tried, that there was an award of $43,500.00 for the building that was paid, and the money accepted by Edlin, and thereafter that Edlin has filed suit against the insurance companies insuring the building in another suit pending in this court, seeking the recovery of $50,-000.00 for damage to the building. We wish to show all of that, Your Honor, in connection with intention or motive."

This record is thereafter replete with counsels' extensive arguments concerning that offer of proof, and we find ample indications of the trial judge's patient and careful consideration of the problem thus generated by the defense— and which hardly merited even that degree of attention and time. A reading of the recitation, labeled "offer of proof," shows that these insurers sought to pyramid inferences and multiply innuendos for whatever influence it might have had on the jurors' emotions. The jury was fully aware of the condemnation proceeding and apparently defendants simply desired to wring out a few more drops of detail for argumentative purposes. A glittering generality extirpated from Milhim v. Hawkeye Insurance Co., 1912, 171 Ill.App. 262, completely unpersuasive here, is quoted to us by defendants, *i. e.*, "any and all evidence which to the slightest degree tended to prove a conspiracy as charged was competent and should have been admitted." There, Hawkeye was trying to establish incendiarism as a defense on Milhim's fire policy. But it is well settled in Illinois, by her Supreme Court, that: "A judicial opinion must be read as applicable only to the facts involved and is authority for what is actually decided in the case [citing] and not for other questions to which the language has no application." People ex rel. Fisher v. Baltimore & O. R. Co., 1945, 390 Ill. 389, 393, 61 N.E.2d 382, 384, accord Village of Lombard v. Illinois Bell Telephone Co., 1950, 405 Ill. 209, 219, 90 N.E.2d 105. Speaking for a unanimous court in Armour & Co. v. Wantock, 1944, 323 U.S. 126, 132–133, 65 S.Ct. 165, 168, 89 L.Ed. 118, Mr. Justice Jackson reiterated that same principle pervading federal courts: "It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion." Consequently we point out that the Illinois Appellate court, 171 Ill.App. 262, 265 stated, *inter alia:* "As the judgment appealed * * * must be reversed and the cause remanded, for the reasons hereinafter stated, we shall not detail or further discuss the evidence, or determine the probative force or effect of the same * * *" Subsequently in its opinion, immediately before the sentence from which defendants derive such comfort, the Appellate court merely stated, id. 267: "The court (below) further erred in refusing to permit the defendant to develop by the testimony of the witness Bahout, and by cross-examination of the plaintiff and Charles Solomon, alleged facts which tended to establish the charge that a conspiracy existed as heretofore stated * * *." Details of Hawkeye's affidavit of merits concerning Milhim's conspiracy with other persons to procure insurance upon his stocks of goods for the purpose "of having the

same destroyed by fire" are unreported. Indeed the Appellate court restricted its opinion to a description of the pleadings; facts shown by the record are unstated. Yet it is quite clear that the Milhim case is not specific authority for introducing details of condemnation proceedings in suits on fire policies. Such matter is remarkably absent from that opinion. In the appeal before us these insurers sponsored evidence of condemnation and Edlin's award of $43,500 as indicative of pressures or influences stimulating Edlin's motive as thereby giving color of probability to their hypothesis of incendiarism. "But what conduct and what outer events are of value as showing the probable existence of the emotion is a different question from the relevancy of the emotion to show the probability of an act induced for it." 1 Wigmore, § 117 (3d ed. 1940). Thus the question of relevancy, here, was whether the fact Edlin's building was taken by eminent domain and for which he received a cash award was of probative value to show his motive for burning his inventory. Accordingly the question below was whether the items stated in defendants' offer of proof were admissible to further buttress probable existence of motive, but not as manifesting the motive itself. But we think enough about condemnation of the building was received in evidence, given to the jury, and we emphasize, urged in three different places in defense counsel's closing argument. At best, then, the material in defendants' offer of proof was merely a proposed embellishment of a fact already before the jury. In our opinion the district judge correctly rejected detailed ramifications and tangents of the condemnation case. We cannot agree that alleged errors of the trial judge, in connection with the admission and exclusion of evidence deprived defendants of substantial justice. Having satisfied ourselves that each and everyone of defendants' contentions put forth in support of their several assignments of error are all wanting in merit, it is unnecessary to relate the facts established by this record. Indeed, upon reading the record we think the insurers managed to inject just about the maximum myriad inferences and conjectures that could have suggested arson to a jury of laymen, yet the fact-finders rejected defendants' theories. We refuse to annul this verdict. None of the district judge's actions, of which defendants complain, are "inconsistent with substantial justice", Fed. Rules Civ.Proc. rule 61, 28 U.S.C.A., under the circumstances of this case.

The judgment appealed is affirmed.

Affirmed.

DUFFY, Chief Judge (dissenting).

Plaintiff was the owner of a one-story store building and a stock of merchandise in a rapidly deteriorating neighborhood in the City of Peoria, Illinois. He had owned and operated this building since 1923. He also owned vacant store buildings immediately on either side of the store building which he was occupying on November 28, 1952. In the operation of the store, he employed his son-in-law Berg as manager. There were three additional employees.

Plaintiff's store had been closed on Thanksgiving Day, the day before the fire. Berg was the only person in the store on Thanksgiving Day. At approximately 8:00 a. m. on the day of the fire, plaintiff and Berg unlocked the store and went inside. Normal conditions seemed to prevail. The electric lights were in working order. The three other employees were not due at the store for half an hour. Berg went to the basement to take care of the furnace. He testified he was not smoking on this occasion. A few minutes later smoke was seen at the back stairway coming from the basement. Instead of calling the fire department from the front of the store which apparently could have been done at that time in complete safety, plaintiff ran across the street to Saylor's Confectionery Store. He said to the proprietor: "Mrs. Saylor, my place is on fire and I am afraid I have lost everything I have got." Mrs. Saylor offered to call the fire department, but Edlin insisted that he make the call.

The records of the Peoria Fire Department disclose that the fire at the Edlin

store was reported at 8:18 A.M. The fire-fighting equipment arrived at the store within two minutes thereafter. The fire in the building was then of such extent and intensity that it was necessary to fight the fire entirely from outside of the building.

There were numerous suspicious circumstances in addition to those already narrated. I mention but two. Through some remarkable coincidence, Edlin had retained at his home the books and records pertaining to the inventory of merchandise which was destroyed by the fire. All of the records for previous periods were at the store and were destroyed. Also, the book purporting to contain the 1952 inventory was highly suspect. Many of the entries were for the year 1953. Furthermore, to rule out the possibility of an explosion of the furnace or the stoker, a subsequent examination showed no fire damage to either.

The defense of arson must usually be based upon circumstantial evidence. Rare indeed is the case where direct proof of incendiarism can be shown. "The existence of a motive in plaintiff alone is a weighty element in the proof of arson." Wilson v. Aetna Insurance Co., La.App., 161 So. 650, 651. I believe that the learned trial court committed reversible error, because he excluded evidence which should have been considered by the jury on the question of motive. The error is more glaring because the trial court permitted the plaintiff to offer evidence showing lack of motive.

Prior to the fire, a condemnation suit had been prosecuted. It sought to condemn Edlin's property together with other property in connection with a proposed Federal Public Housing Development. A formal offer of proof was made by defendants to show that Edlin had received an award of $43,500 for his building and that the amount of the award had been paid to him; that thereafter Edlin had filed suit against insurance companies insuring the building seeking recovery of $50,000 for damage to the building caused by the fire. The Court refused the offer of proof saying "we don't want to try a condemnation suit."

At another point the Court ruled "Objection sustained. I don't think it is material to this case at all. This was a construction of this bridge across the river, was it, and they were going to condemn it?"

It seems clear to me that on the question of motive, defendants should have been permitted to show that Edlin would profit handsomely by a fire. The $43,500 received by Edlin as a result from the condemnation suit, was in the nature of clear profit. The suits against the insurance companies, if successfully maintained, would bring in an additional $50,000 for damage to the building and approximately $34,000 for damage to his stock of goods.

The majority apparently finds no error in the rejection of this material evidence because it "was merely a proposed embellishment of a fact already before the jury." The trial court had ruled several times that such evidence had nothing to do with the case. In the light of such rulings how the jury could give even a limited effect to the condemnation suit, escapes me.

I think there was further error in the trial court's exclusion of opinion evidence by state deputy marshal Parlier. It was plaintiff's theory that the fire was caused by the furnace and from cardboard placed immediately adjacent thereto. Parlier had made an inspection of the premises after the fire. His opinion was sought as to whether there had been any intense fire immediately around the furnace. The court sustained an objection saying "His opinion, I don't think, would help the jury."

Parlier had been engaged in fire prevention work as a state official for some twenty-five years. He had much experience in investigating questionable fires. He had pursued studies in that field at Purdue University and at Urbana. It seems to me that he had the qualifications of an expert to answer the question which was material to the issues.

It is my view that the exclusion of material evidence affected the substantial rights of the defendants. I would reverse for a new trial.