THE CITY OF CHICAGO

*v.*

THE CHICAGO TELEPHONE COMPANY.

*Opinion filed October 23, 1907—Petition stricken Dec. 5, 1907.*

1. MANDAMUS—*mandamus will lie to compel performance by a corporation of duty to public.*  Where there is a grant by a city to a corporation, and an acceptance by the latter, under an ordinance imposing the performance of acts in the nature of duties or services to the public and not merely to the municipal corporation itself, the corporation accepting the grant may be compelled, by *mandamus,* to perform the duties to the public so imposed.

2. SAME—*mandamus is not a proper remedy to enforce contractual rights.*  *Mandamus* is not a proper remedy for the enforcement of contractual rights.

3. SAME—*when mandamus will not lie at suit of municipal corporation.*  Acceptance by a telephone corporation of a license to use the streets under an ordinance requiring it to report, semi-annually, to the city a statement of its gross receipts for the preceding six months and to pay into the city treasury a certain per cent on such sum, creates a contract between the corporation and the city, and *mandamus* will not lie at the suit of the city to compel the corporation to perform its agreement, upon the theory that it is a duty to the public.

4. MUNICIPAL CORPORATIONS—*grant by a city to corporation to use streets is only a license.*  A grant by a city to a corporation to use the streets of the city upon the terms imposed by the ordinance is a license and not a franchise.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This is an appeal from the judgment of the Appellate Court for the First District affirming the judgment of the circuit court of Cook county dismissing appellant's petition for a writ of *mandamus.*  The appellant's amended petition prayed that appellee be required forthwith to file with the

comptroller of the city a true statement of the gross receipts of appellee from all its business done for the six months next preceding January 1, 1905, within the limits of Chicago as the limits existed during the said six months, the same to be sworn to by Arthur D. Wheeler and Charles E. Moseley, president and secretary, respectively, of appellee. It was prayed in the petition that at the time of filing the statement appellee be compelled to pay into the city treasury three per cent of said gross proceeds. Demurrer was sustained to the petition and appellant elected to stand by its petition, whereupon the same was dismissed. Appellant prosecuted an appeal to the Appellate Court for the First District, where the judgment was affirmed, and by its further appeal appellant brings the case to this court.

The petition alleges that appellee was organized on or about January 14, 1881, under the general laws of Illinois relating to corporations; that appellee was authorized by its charter to construct and operate telephone and telegraph lines and do a telephone and telegraph business; alleges the adoption by the city of an ordinance authorizing appellee to construct its lines of wire in said city, and that section 6 of said ordinance is as follows:

"6. *Compensation—Service Rates—Use of City—Rights Reserved.*) The said Chicago Telephone Company shall file with the comptroller of the city, on the first days of January and July of each year, a statement of its gross receipts from the telephone business done by said company within the city of Chicago for the six months next preceding such statement, which statement shall be sworn to by the president and secretary of said company, and at the time of filing said statement the said company shall pay into the city treasury three (3) per cent on such gross receipts, and said company, during the term for which this ordinance was granted, shall not increase to its present or future subscribers the rates for telephone service now established, and provided, also, that with the acceptance hereinafter required

there shall be filed by said company a schedule showing the rates charged by said company for telephone service at the date of the passage of this ordinance, within the limits of the city of Chicago. And the said company shall connect its wires with the mayor's office, department of public works, fire department, police department, building department, city collector's office, city clerk's office, health department and law department, and place and keep one telephone in each of said places free of charge to the city, so that said telephones may be used in connection with all wires under control of said company connected with its exchange in the city of Chicago; and said company shall also rent to the city of Chicago telephones for the sole use of the police and fire alarm system of the city of Chicago at an annual rental not to exceed five ($5.00) dollars per annum for each telephone: *Provided, however,* that nothing in this ordinance contained shall be construed or taken as preventing the city of Chicago, whenever it shall be authorized to do so, from passing an ordinance regulating the rates to be charged by telephone companies for the rental of telephones or for the licensing of telephone companies, it being the intention of this ordinance that the city of Chicago shall in no way surrender any rights it may have, or may hereafter acquire, to license telephone companies or to regulate the prices to be charged for telephones, but upon such licensing or upon such regulation of such prices, then the provisions of this section as to payment of revenue and furnishing of telephone facilities to the city of Chicago shall cease to be binding upon said company: *Provided, also,* that nothing in this ordinance contained shall be construed as preventing the city of Chicago from granting an ordinance to any other telephone company."

It is further alleged that appellee accepted the ordinance in writing, as was thereby required, and filed a bond in compliance with the ordinance; that since January 10, 1889, until now, appellee has constructed, operated and extended

its telephone lines, under the authority of said ordinance, in the streets, alleys and public grounds of the city and thereby conducted its telephone business; that it was appellee's duty to file, semi-annually, a sworn statement of the gross receipts from all its business, with the comptroller, and at the same time pay three per cent of such gross receipts into the city treasury; that the appellee filed in the office of the city clerk a schedule of the rates charged by it within the city limits; that by means of a telephone line constructed under the ordinance it was enabled to place telephone instruments with its subscribers, from which it derived and is deriving large profits; that appellee's sole right to carry on its business in the city of Chicago is derived from the said ordinance and the consent of the municipal authorities contained therein; that appellee's duty to file a statement of the gross receipts of the business done by it within the city limits for the previous six months relates to the limits "as those limits existed during said period of six months;" that, notwithstanding its legal duty, the appellee, from January 10, 1889, until July 15, 1904, prepared and filed, semi-annually, false and misleading statements of its gross receipts from business done within said city; that none of said statements included "all the gross receipts from all the telephone business" done by appellee within the city limits "as the city limits existed during the six months next preceding the date on which each of said statements was required by the said ordinance to be filed;" that none of the said statements dealt with the receipts from any business done outside the limits of the city as they existed on January 10, 1889, although since that date said city limits had been greatly extended by the annexation of adjacent cities, towns and other territories; that none of the statements include either the receipts from long distance business or "toll charges;" that at the dates of the filing of these statements appellee paid three per cent of the amount therein given as its gross receipts to the city, which accepted

these payments in ignorance of the fact that they were not three per cent of all the gross receipts from the business within the city limits for the previous six months; that the city and its successive comptrollers were deceived in accepting all of the said payments by the peculiar and cunning wording of the statements which accompanied them. Certain parts of the petition were expunged by the trial court.

The court below sustained the demurrer upon two grounds: First, that the ordinance set out by appellant in its petition constitutes, in substance, a contract between the parties, and that a writ of *mandamus* will not issue to enforce a mere contract; second, that *mandamus* will not be awarded where it is sought for the enforcement of a mere abstract right and will not definitely fix the rights of the parties, even though the right of the petitioner, under the contract, is clear.

MACLAY HOYNE, (JAMES HAMILTON LEWIS, Corporation Counsel, and KNIGHT & HOYNE, of counsel,) for appellant.

HOLT, WHEELER & SIDLEY, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The most important question presented for consideration in this case is whether or not appellant is entitled to the writ of *mandamus* for which it prays, requiring appellee to file a true statement of its gross receipts from all business within the present city limits and to pay into the city treasury three per cent on such gross receipts. It is insisted by appellee that the ordinance upon which appellant bases its claim of right to the writ of *mandamus* prayed for constitutes a contract between appellant and appellee, and that, such being the case, *mandamus* will not lie. It is conceded by appellant that *mandamus* is not the proper remedy to enforce contractual relations, and this principle is well set-

230—11

tled. We are therefore brought directly to a consideration of the ordinance with a view of ascertaining whether such ordinance has, in effect, the binding force of law or whether it constitutes a contract.

It is the well settled law in this State that where there is a grant, and an acceptance by a corporation of an ordinance involving the performance of acts in the nature of duties or services to the public as a condition of the grant, the corporation accepting the franchise may be compelled by *mandamus* to perform the duty so enjoined. (*People* v. *Suburban Railroad Co.* 178 Ill. 594; *Rogers Park Water Co.* v. *Fergus,* 178 id. 571, and cases there cited.) But in each of these cases *mandamus* was awarded to compel the respondent to discharge some duty owing to the public and not to a municipal entity and where a clear right was thought to exist. There is a clearly drawn distinction between cases of that class and cases in which the duty or obligation is owed primarily to the municipality. In *People* v. *Suburban Railroad Co. supra,* it was sought to compel respondent to comply with the express provisions of an ordinance of the village of River Forest creating a duty to the public to be performed by the company for the benefit of the public. The writ was there awarded commanding the company to sell tickets to passengers good to stations in River Forest at the same rate as to stations in the town of Cicero, as the ordinance required, and it is evident that this was a duty owing to the public in general and not particularly to the municipality as such. In *Rogers Park Water Co.* v. *Fergus, supra,* a writ of *mandamus* was awarded fixing water rates, as provided by an ordinance of the city of Chicago enacted subsequently to the annexation of Rogers Park, which was accepted by the water company and under which ordinance it had laid its pipes and previously operated its water-works. In this case, also, the company's primary duty lay to the public as such. Evidently, in neither of the cases above cited was the obligation contractual.

No individual had in either case a contract with the respondents, but the public did have certain rights under the ordinances which respondents were bound to regard. The failure on the part of respondents to regard these clear rights was the basis of the petition for *mandamus,* and the writ was properly awarded. But in the case at bar the public has no relations, through the ordinance, with appellee, either contractual or otherwise. It cannot be said that an individual citizen has an interest in the filing of the statement at all. Nor can he have any interest in the payment of the three per cent required by the ordinance to be paid into the city treasury, except the general interest that the sum so paid would be applied on the payment of municipal indebtedness and thus tend to decrease the burden of taxation. It cannot be seriously contended that there exists in this a right so clear that it is enforcible by *mandamus.* The ordinance in this case prescribes certain conditions upon which the city of Chicago, as a municipal entity, is willing to permit appellee to use its streets, and parts of these conditions are that appellee shall make, semi-annually, a report of the business done by it within the city limits for the previous six months and pay into the city treasury three per cent of such sum. Appellee accepted this ordinance, and from that time forth it became a contract between the parties. A franchise emanates from the government or sovereign power, and where a corporation is created by law, with power to use the streets of the city, upon the consent of the city, under such conditions as may be imposed, and by ordinance such consent is prescribed or privilege granted, the grant by the city is a license and is not a franchise. When such license is accepted by the corporation a valid and binding contract is created with the municipality, to compel the performance of which *mandamus* will not lie. *Chicago City Railway Co.* v. *People,* 73 Ill. 541; *Chicago Municipal Gas Light and Fuel Co.* v. *Town of Lake,* 130 id. 42, and cases cited; *City of Belleville* v. *Citizens' Horse*

*Railway Co.* 152 id. 171; *People* v. *Central Union Tele-phone Co.* 192 id. 307; *People* v. *Blocki,* 203 id. 363; *City of Chicago* v. *Rothschild & Co.* 212 id. 590.

Having reached the above conclusion it is unnecessary to consider other assignments of error. ·

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*