The City of New York, Respondent, *v.* Bee Line, Inc., Appellant. (Action No. 1.)

First Department, December 27, 1935.

*Charles H. Tuttle* of counsel [*John Holley Clark, Jr.*, attorney], for the appellant.

*Frederick vP. Bryan* of counsel [*William S. Gaud, Jr.*, with him on the brief; *Paul Windels, Corporation Counsel*, attorney], for the respondent.

TOWNLEY, J. In the complaint at bar two causes of action are pleaded. The first relates to routes Q-2, Q-3, Q-4 and Q-5 in Jamaica. These routes were established by Bee Line, Inc., and

all of them were operated for more than ten years. During that period Bee Line, Inc., had no franchise and paid nothing to the city of New York for the privilege of carrying passengers on those routes. On January 16, 1933, a one-year franchise contract was given to Bee Line, Inc., covering these routes. Under this franchise it agreed to pay the city of New York ten per cent of its gross receipts.

At the expiration of the franchise on January 16, 1934, no new arrangement had been made. The bus line continued to operate. On February fourteenth the city acknowledged receipt of moneys due for the period immediately prior to the expiration of the franchise and asked the defendant to file a statement and forward a check covering ten per cent of the gross receipts from January 16 to January 31, 1934. This demand covered a period of time during which the defendant had no franchise. The defendant replied that it owed nothing. Defendant continued to refuse to pay until April 30, 1934. At that time certain city officials threatened that if payments were not made the buses would be put off the streets and that no applications by defendant for further franchises for the routes on which it operated would be considered. To keep its buses running, defendant thereafter made payments covering the period from January 16 to August 31, 1934, amounting to about $35,150. Each payment was accompanied by a letter of protest as follows: " This payment is made under protest and Bee Line, Inc. reserves its rights to recover the amount paid from the City of New York on the ground that Bee Line, Inc. was and is under no legal obligation to pay the amount in question." It finally became apparent that the city would not give defendant a new franchise. Defendant thereupon ceased making further payments. In February, 1935, this suit was brought.

In the meantime, on March 23, 1934, the board of estimate and apportionment had passed a resolution which recited: " That the Department of Plant and Structures be directed to temporarily supervise the equipment and operation of omnibuses operating over routes for which no franchises have been granted or have expired, with a view to securing a safe and adequate equipment and service; that no new operation shall be permitted except by resolution of this Board; that the President of the Board of Aldermen, the President of the Borough in which the service may be located, and the Corporation Counsel are hereby constituted a committee to determine whether operation of any route operated without a franchise is required as emergency operation, and, in such event, notify the Department of Plant and Structures and the Police Department, but such emergency permit shall not exceed a period of thirty (30) days, accordingly; that the Comptroller shall collect from the

operators of such routes for the use and occupation of the streets and avenues of the City a sum equal to the percentage of gross receipts specified in an expired franchise for such route, unless a higher percentage is specified in any pending petition by such operator for a franchise over such route, and where no franchise has previously been granted for such route, a sum equal to 10 per cent of the gross receipts of such operation."

The city took no steps to give thirty-day permits to the defendant or to declare that any emergency existed. Accordingly, although. the resolution is mentioned in the complaint, the city's cause of action, if it has any against the defendant, cannot be based on any contract or quasi-contract arising under it because nothing done by the defendant or the city satisfies its terms.

The facts are substantially conceded and the primary question is whether the cause of action attempted to be stated in this complaint can be sustained. In the first cause of action there is an allegation concerning the franchise contract above described and a reference to the routes involved. It is then said that the defendant agreed to pay ten per cent of its gross receipts " during the operation of said franchise contract." The city further alleges that the defendant operated and still operates the routes in question; that it paid ten per cent of its gross receipts up to August 31, 1934; that the resolution of March 23, 1934, was duly adopted; that the defendant prior to March 1, 1934, applied for a new franchise to operate the routes in question, and the conclusion is stated as follows:

" *Ninth.* That in accordance with the terms of the said resolution of the said Board of Estimate and Apportionment, there is now due and payable from the defendant to the plaintiff the sum of $22,900, which is the fair and reasonable value thereof for the use and occupation of said streets and avenues referred to in said routes Q-2, Q-3, Q-4 and Q-5, in the said maintenance and operation of its omnibuses thereon for the period from January 16, 1934, to and including January 31, 1934, and for the period from September 1, 1934, to and including January 31, 1935."

From the statement of facts already made it must be obvious that the city admits the termination of a prior franchise, the failure to give a new one or to renew the old one, and yet claims the fair and reasonable value for the use and occupation of the streets in the absence of any franchise or legal permission to operate. It is also clear that the reference to the resolution states a legal conclusion at variance with the facts as shown on the trial and on the face of the complaint. There was no accord between the resolution and the amount herein claimed.

The second cause of action relates to two routes over which the defendant never had a franchise, Q-3A and Q-4A. According to the evidence introduced by the city of New York during the trial of the case, the defendant was not desirous of giving service on either of these routes as they competed to some extent with routes already in operation. However, in the face of insistent demand, defendant finally applied for a franchise. Although several hundred people appeared in favor of the granting of the franchise and although there was no opposition, it was never granted. Certain city officials, however, asked that service be inaugurated without a franchise. The company then stated that if it operated without a franchise, it would not pay the city of New York any percentage on its gross receipts. At that time this position was accepted by the officials of the city. In fact, no payments were ever made with respect to these routes although the defendant offered to pay under protest just as it had paid under protest on the four routes involved in the first cause of action. As to the allegations in the second cause of action, the complaint refers to these two routes and very simply sets out that the defendant has used and occupied the streets in question; that the streets are public highways; that the resolution of March 23, 1934, was adopted; that the defendant had notice thereof, and finally:

"*Fourteenth.* That by reason of the use and occupation of said streets and avenues by the defendant and by reason of the said resolution of the Board of Estimate and Apportionment, dated March 23, 1934, there is now due and payable from the defendant to the plaintiff, the sum of $12,800 which is the fair and reasonable value thereof, no part of which said sum has been paid although duly demanded."

Thus the gist of the second cause of action is a claim by the city that it is entitled to the reasonable value of the use and occupation of the streets for routes on which no franchise has ever been given and for which no contract ever was made, and concerning the running of which routes the predecessors of the present officials had agreed that nothing should ever be paid in the absence of a franchise. No circumstances explaining how an implied duty to pay arose are pleaded, since the resolution clearly has no application.

The essential claim made in this complaint is that the city has some sort of proprietary interest in the streets and that the occupation of them by bus companies who have no franchise is an invasion of its proprietary right. The very words of the complaint, "use and occupation," carry a connotation of physical proprietary interest. This theory, however, has been disapproved by the Court of Appeals in a case in which the court found it necessary precisely

to define the status of a bus which was on the streets without a franchise. In its opinion (*Klinkenstein* v. *Third Avenue R. Co.*, 246 N. Y. 327, 331) the Court of Appeals said: " The plaintiff's bus was not illegally in the street. The illegality did not consist in operating an automobile bus, as the vehicle had been properly licensed and the chauffeur duly authorized to operate it. The illegality consisted not in the operation and the use of the streets, but in the carrying of passengers for hire; it was the use to which the vehicle was put and not the vehicle itself which was unauthorized upon the streets of New York."

We feel bound by this exact analysis of the status of a bus company which has no franchise. Since the buses legally occupy the streets, there can be no claim for compensation for such occupancy.

It is manifest that when, in the absence of a contract, bus owners collect fares from passengers, there is an invasion of the city's power to sell the privilege of collecting fares. But this unlawful appropriation of the privilege ordinarily ancillary to a franchise cannot be ratified by the city on the theory of use and occupation because historically an action for the value of use and occupation has never been permitted unless the conventional relation of landlord and tenant or a situation analogous thereto exists between the parties. The Court of Appeals in *Preston* v. *Hawley* (101 N. Y. 586, 588) said: " The plaintiff sought to recover in this action for the use and occupation by the defendant, of certain real property belonging to the plaintiff. It is not disputed by the respondent, but that it was not only necessary, to prove the title of the premises in the plaintiff, and the occupancy thereof, by the defendant, but that the conventional relation of landlord and tenant existed between the parties, in order to maintain the action. (*Thompson* v. *Bower*, 60 Barb. 463, 477; *Sylvester* v. *Ralston*, 31 id. 286; *Hall* v. *Southmayd*, 15 id. 32, 36.) This is the uniform doctrine of the cases and elementary writers, and has been indisputable law since the enactment of the statute authorizing this form of action. It is not, however, essential that the relation should be created by written instrument or express agreement, but there must be proof of some circumstances authorizing an inference that the parties intended to assume such relations toward each other, to support the action. (*Benjamin* v. *Benjamin*, 5 N. Y. 383, 388; authorities *supra*.) "

This view was restated when the same case was again before the court (139 N. Y. 296, 298) as follows: " The plaintiff cannot, therefore, recover without establishing the conventional relation of landlord and tenant. He succeeded to the title by purchase from the defendant, who remained in possession after the sale, during

the period for which rent is claimed. But the bare proof of use and occupation by the vendor, after conveyance of the premises granted, is not sufficient to support an action for compensation under the statute. The purchaser's remedy, in such cases, is trespass, or ejectment, and for the recovery of mesne profits. (Woodfall's L. and T. [11th ed.] 510; *Boston* v. *Binney,* 11 Pick. 1; *Greenup* v. *Vernor,* 16 Ill. 26; *Tew* v. *Jones,* 13 Meeson & Welsby, 12.) "

In the absence of a contract between the parties covering the period for which recovery is sought, there can be no inference that a relationship like that of landlord and tenant exists between the plaintiff and the defendant. The plaintiff has no title to the streets (*Beekman* v. *Third Avenue R. R. Co.,* 153 N. Y. 144, 152, and *People ex rel. City of New York* v. *N. Y. R. Co.,* 217 id. 310, 312), and the defendant, so far as appears from these records and complaints, has consistently refused to make any bargain with respect to the occupation of the streets.

In this regard the cases before us differ radically from two precedents strongly urged upon our attention by counsel for the city. In both *City of New York* v. *E. P., B. & E. N. Y. Transit Relief Assn., Inc.* (241 App. Div. 814; leave to appeal refused by the Court of Appeals, Oct. 2, 1934, not reported) and *Farnsworth* v. *Boro Oil & Gas Co.* (216 N. Y. 40) there was an irregular contract between the parties. It was held that the defendant had accepted the benefits under the contracts and was estopped to deny its technical invalidity. Those cases rest upon their special facts and are entirely distinguishable from the situation at bar.

There is a sound reason underlying the refusal to give legal assistance to a municipality in this situation. The city of New York, by section 242 of the charter, has received from the State the grant of a power to give franchises to parties to run omnibuses for such compensation as it is able to gain by contract. The manner in which that power shall be exercised has been prescribed by the State in section 74 of the charter. The exercise of the privilege of running buses without securing a franchise has been made illegal by section 1458 of the charter and by article 3-A of the Public Service Law. (*Brooklyn City Railroad Co.* v. *Whalen,* 191 App. Div. 737; affd., 229 N. Y. 570.) The court has already decided that a taxpayer may compel the city to prevent a continued illegal running of buses. (*Bogart* v. *Walker,* 231 App. Div. 499; *Bee Line, Inc.,* v. *LaGuardia,* 244 id. 151.) The city itself concededly has the power and the duty to prosecute companies which illegally run buses for hire and can summarily stop their operation.

It is manifest that when the city attempts to collect for the illegal act of a bus company, it is compounding that illegality and is placing

itself *in pari delicto* with the offender. No court under such circumstances has ever given relief to a party. The parties are left in such positions as they have reached.

This also disposes finally of the counterclaim made by Bee Line, Inc.

The judgment in so far as it dismissed the counterclaim for moneys paid under duress should be affirmed. The judgment granting the plaintiff affirmative relief against the defendant should be reversed, with costs of this appeal, and the complaint dismissed.

MARTIN, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgment in so far as it dismissed the counterclaim for moneys paid under duress affirmed. Judgment granting the plaintiff affirmative relief against the defendant reversed, with costs of the appeal, and the complaint dismissed.

Settle order on notice.