(No. 31288.

THE VILLAGE OF LOMBARD, Appellant, *vs.* ILLINOIS BELL TELEPHONE COMPANY, Appellee.

*Opinion filed January 18, 1950.*

Thomas A. Matthews, of Chicago, for appellant.

Sidley, Austin, Burgess & Harper, of Chicago, (Kenneth F. Burgess, Leslie N. Jones, Howard Neitzert, George A. Ranney, Jr., and Henry A. Preston, of counsel,) for appellee.

Louis Ancel, of Chicago, (Jesse Marcus, of counsel,) *amicus curiae.*

Mr. Justice Gunn delivered the opinion of the court:

A suit at law was filed by the village of Lombard, a municipal corporation, in the circuit court of Du Page County to recover a penalty of $200 per day from the Illinois Bell Telephone Company, a corporation, because of its failure or refusal to file a quarterly statement of its gross receipts, as required by ordinance 506 of said village. The defendant, hereafter referred to as the telephone company, appeared and made a motion to dismiss on several grounds, claiming the ordinance was illegal, null and void. The circuit court sustained the motion and ordered the complaint dismissed. The court certified that the validity of an ordinance was involved, and that public interest required that an appeal be taken directly to the Supreme Court. The village appeals.

The complaint discloses that in 1922 an ordinance was enacted granting the telephone company the right until

1946, and thereafter until terminated upon sixty days' notice, to construct, erect, renew, maintain and operate the usual facilities of a telephone communication system over, under and across the streets, alleys and public places within the village. No charge or license was ever exacted by this ordinance. In December, 1946, the board of trustees of said village terminated the rights of the telephone company under the 1922 ordinance by a sixty-day notice as of February 13, 1947, and on February 2, 1948, enacted ordinance 506 involved in this suit.

The provisions of the ordinance involved in this proceeding are sections 1, 3 and 6. Section 1 in substance provides that it shall be unlawful to maintain and install any pipes, conduits, wires, or other equipment for the transmission of gas, electric current, impulses, sounds, voices or communications, in, on, under or over any street, alley, sidewalk, parkway or other public place in the village, or to maintain or install any pole or mast to support or hold such wires, without complying with the terms of the ordinance.

Section 3, out of which the principal controversy arises, is as follows: "Unless otherwise provided by specific grant of authority from the village to a person, firm or corporation authorized to maintain poles and wires in, under or over any such public place, or to maintain mains for for the transmission or transportation of gas in or under any such place, each person, firm or corporation maintaining any pipes, conduits, cables, poles or wires in or under any public place shall pay to the village for the privilege of so maintaining such equipment a sum equivalent to 3 per cent of the gross receipts to such person, firm or corporation for the services, current, or gas rendered to premises within the village. Any such person, firm or corporation shall render to the village treasurer a verified statement of such gross receipts at least quarterly, and the payments provided for herein shall be made within thirty days follow-

ing the end of each quarter of the calendar year. In the event of a telephone company being subject to the provisions of this ordinance, the charge for services shall include the charges for toll calls made from premises in Lombard and charged to the station in Lombard from which such call is made."

Section 6 of the ordinance provides that any person violating the ordinance "shall be fined not less than Ten Dollars nor more than Two Hundred Dollars for each offense, and a separate offense shall be deemed committed on each day during or on which a violation occurs or continues."

The complaint further alleges that the telephone company has refused, and continues to refuse, to render a statement of its gross receipts in violation of ordinance 506, and prays for the penalty incurred by each day of such refusal, claimed in the complaint to amount to $24,000, and for a writ of *mandamus* to compel the said telephone company to file such a statement of gross receipts with the village clerk from February 13, 1948, to July 23, 1948, the date of the filing of the complaint.

The motion to dismiss specifies several grounds, the main reason of which is the invalidity of the ordinance in attempting to exact 3 per cent gross receipts for a right to continue the privilege of maintaining its equipment in, over, or under the public streets and places of the village. No question of ouster is presented or prayed for in the complaint, nor is there presented the question of any illegal act upon the part of the telephone company other than such as is claimed to be required by said ordinance.

It will at once be seen that the validity of the levy of 3 per cent of gross receipts, required by section 3 of the ordinance, will determine whether the suit for penalties has any legal foundation, since, of course, if the imposition of 3 per cent is unauthorized by law a penalty

could not be exacted for failure to comply with the illegal exaction.

The parties to the suit cannot agree upon the nature of the charge or exaction contained in this ordinance. Appellant admits it is not a police or regulatory measure, but claims it is in the nature of a rental for the use of its streets. On the other hand, the appellee contends there is no grant of authority by the General Assembly, either direct or implied, authorizing a municipality to make such a charge, and that it is a privilege or occupation tax, for which no authority has been granted by the legislature; and that conceding, but not admitting, that the charge is intended to be considered as rental for the use of the public streets, the same is illegal because of want of authority upon the part of the village to make such a charge.

It is therefore advisable in the first instance to determine whether the provisions of section 3 of the ordinance are in the nature of a tax, or whether it is a rental for the use of city property. In approaching this proposition we should examine the general limitations of taxation. Section 1 of article IX of the constitution, after making provisions for the general property tax to be levied according to valuation, gives the General Assembly power to tax certain types of business, owning or using franchises or privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates.

Taxes are generally defined as coming within two classes, property taxes and excise taxes, (Cooley on Taxation, 4th ed., vol. 1, sec. 46,) and excise taxes are variously denominated, such as occupational, licenses, privilege, franchise, and other types which are distinguished from property taxes by one being a tax directly upon the property itself, and the other as a charge for a privilege

arising from the use of the property itself, generally intangible in nature. (*Reif* v. *Barrett,* 355 Ill. 104.) In *Bachrach* v. *Nelson,* 349 Ill. 579, we held that the limitation of section 1 of article IX of the constitution confined taxation to property taxes, occupation taxes and franchise taxes or privilege taxes, although broadly speaking the last two mentioned come within the term "excise taxes." The above are limitations upon the power to tax, since the general power to tax, inherent in the sovereignty, vests in the General Assembly. *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.,* 76 Ill. 561; *Reif* v. *Barrett,* 355 Ill. 104; *Elmhurst State Bank* v. *Stone,* 346 Ill. 157.

A municipal corporation has no inherent powers of its own. Such powers are acquired wholly by a grant from the General Assembly. (*City of Chicago* v. *Chicago Beverage Co.* 372 Ill. 33; *Littell* v. *City of Peoria,* 374 Ill. 344; *City of Chicago* v. *Ingersoll Steel and Disc Division of Borg-Warner Corp.,* 371 Ill. 183.) And neither is a municipal corporation endowed with inherent power to license or exact payment for a privilege. The express enumeration of powers granted a city by statute is an exclusion of powers not granted. (*City of Chicago* v. *Chicago Beverage Co.,* 372 Ill. 33; *Village of Kincaid* v. *Vecchi,* 332 Ill. 586.) Thus, if the exaction made by section 3 of the ordinance in question is considered in the nature of a tax permitted by the constitution to be exercised by the General Assembly, or which may be delegated to a city or municipal corporation, it becomes necessary for the latter to establish the grant of authority by which it exercises such right.

In recent years a number of statutes have been enacted which are not greatly different in nature from that of the ordinance under consideration. The Retailers' Occupation Tax Act provides for a tax upon persons engaged in the business of selling personal tangible property at retail,

at the rate of 2 per cent on the gross receipts from such sales of tangible personal property. (Ill. Rev. Stat, 1947, chap. 120, par. 441.) This has been construed by the court not as a property tax but as an occupation tax. (*Reif* v. *Barrett,* 355 Ill. 104.) The General Assembly has also, by the statute known as the Messages Tax Act, (Ill. Rev. Stat. 1947, chap. 120, par. 467.1 *et seq,*) imposed a tax upon persons engaged in the business of transmitting messages in this State at the rate of 3 per cent of the gross receipts from such business; and a like statute, with substantially identical language, levies 3 per cent upon the gross sales from distributing, supplying or selling gas; (chap 120, par. 467.16 *et seq.*) and for electricity; (chap. 120, par, 468 *et seq.*) These several taxes are similar in nature and are occupation taxes exacted for the privilege of carrying on a particular business or occupation. *Reif* v. *Barrett,* 355 Ill. 104; *Svithiod Singing Club* v. *McKibbin,* 381 Ill. 194; *People's Drug Shop,* v. *Moysey,* 384 Ill. 283; *New Jersey Bell Telephone Co.* v. *State Board of Taxes,* 280 U.S. 338, 74 L. ed. 463.

Ordinance 506 in the case before us provides that the telephone company shall pay for the privilege of "maintaining such equipment a sum equivalent to three per cent of the gross receipts for such services, etc." The purport of the language of the ordinance is not different from that of the above statutes, which clearly cover occupation taxes, and if the General Assembly in enacting a statute were to use the same language used in the ordinance we would undoubtedly hold that it was a law providing for a tax upon an occupation. Thus, we are unable to see how any different construction could be given to an ordinance than would be given to an act of the General Assembly.

It will be observed that there is no provision or language in the ordinance which makes any reference to rental, or any language or description from which rental

could be inferred. The tax is upon the privilege of doing business, although the pretense is made in the briefs that the charge is in the nature of a rental. No charge is made in the complaint that any rental is due, or any rental charge made,—only that the village is entitled to a penalty because of a failure of the telephone company to make a statement required by the ordinance. Beyond question, if the provision for the payment of 3 per cent of the gross receipts contained in the ordinance is considered a charge for the privilege of carrying on business in the village of Lombard, it is invalid as exacted without authority granted by the General Assembly.

The fact that the General Assembly refused to enact House Bill No. 14 at the session commencing in January, 1949, which would have given the corporate authorities of a city power to impose a tax at the rate of 3 per cent of the gross receipts upon the business of transmitting messages, and upon the business of selling gas, and likewise for supplying electricity, persuades us that the General Assembly was not only aware that it had not granted to cities the power to exact a tax upon gross receipts, but was not inclined to grant such power.

Appellant, however, contends that the 3 per cent charge is in the nature of a rental for the use of the streets of the village. The public streets are held in trust for the use of the public. (*People ex rel. Burton* v. *Corn Products Refining Co.* 286 Ill. 226; *Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270.) And while power may be granted by the General Assembly to permit the use or the restriction of the use of the streets, such power is to be strictly construed. Numerous powers and rights have been granted to a municipality by the General Assembly over the streets of a city, but they are all regulatory in character, and do not grant any authority to rent or to lease parts, or all, of a public street or public grounds.

Section 23-15 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, chap. 24, par. 23-15,) is claimed by appellant to be authority to enact the ordinance in question. This section of the statute in our opinion does not go to the extent claimed by appellant. Power is granted to a city as follows: "To regulate the use of the space over the streets, alleys, other municipal property, and public places of the city, and upon payment of proper compensation, to be fixed by ordinance, to permit the use of the space more than twelve feet above the level of such streets, alleys, property or places, except for purely private uses." This lacks considerable of being a grant of power to rent or let the street, or a portion thereof, to the exclusion of anybody else. Rental implies possession or controlling the use of, exclusively, to the detriment of those for whom it is held in trust. No property is described, no measure of the value of the use fixed, no provision for termination or eviction, or any of the terms necessary to give another possession of a tangible property. The leasehold in this case is not confined to a space twelve feet or more above ground, but includes underground space in conduits, the location of poles, or poles in the ground itself, and space on the ground for the use of streets by which ingress and egress is had from the exchange of the telephone company. This is necessarily true because the charge is for the privilege of using the street for all the facilities necessary for telephone communication, which are not limited to air rights.

From the history of the litigation growing out of obstructions or partial use of streets most of the questions decided involved the placing of awnings, underground space, passage-ways over street or alleys, and similar purprestures placed by adjoining owners, but in no instance called to our attention has the use, similar to poles and wires, been considered as coming under such classification.

No authority to exact a per cent of gross receipts from a utility for the privilege of the use of streets can be authorized by this section.

The pole tax cases, such as *City of Springfield* v. *Postal Telegraph-Cable Co.* 253 Ill. 346, and *City of Peoria* v. *Postal Telegraph-Cable Co.* 274 Ill. 568, do not aid appellant, for the charges in such cases were justified as police or regulatory measures, or special charter provisions, which are not authority for the village of Lombard to enact a revenue ordinance under the guise or .pretense that it constitutes a rental. There being no authority granted by the General Assembly to lease or let public streets for a rental based upon gross receipts or otherwise, the village had no power to exact a rental charge for the use or permission to use the streets and alleys of the village of Lombard.

No case from Illinois has been called to our attention authorizing a municipality to charge rent for its streets, and in other States such power has been held to be non-existent. (*City of Pella* v. *Fowler,* 215 Iowa, 90, 244 N.W. 734; *City of New York* v. *Bee Line, Inc.* 246 App. Div. 28, affirmed 271 N.Y. 595, 284 N.Y.S. 452; *City of Cincinnati* v. *Union Gas & Electric Co.* 49 Ohio App. 166, 195 N.E. 488. The ordinance in question cannot be sustained as authority to collect rental for the use of a public street. The village is not acting as a proprietor demanding pay for the use of its property, but as a tax-levying body for revenue purposes.

It is contended, however, that the case of *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506, has changed all of this, and that we there held city authorities have power to enact an ordinance such as that under consideration, whether it be called rental charge or regulatory fee. We are unable to draw the same conclusion from that case. In the *Geneseo case* the utilities company had received a franchise for operating in the streets of the city, and this franchise had expired. The municipality had and

was operating its own publicly owned similar utility, and refused to extend the franchise of the privately owned utility and notified said utility to vacate its streets. The municipality then filed a complaint with the Commerce Commission praying that the privately owned utility be ordered to vacate its streets and cease doing business in the city. The commission denied the prayer of the petition.

It will be noted that case involved the power of the Commerce Commission to issue such an order, and we held the commission had no such power, and that its power in that regard was limited to the manner in which the cessation of the business could be carried out with the least inconvenience to the public. There was no question in that case of the power of the city of Geneseo to tax, or the power to rent the streets of the city. And, as a matter of fact, in discussing the powers the city might exercise over its streets the opinion referred specifically to the powers granted by the statute. There was no question involved, and no language used in that opinion which indicated a municipality had powers over its streets which were not expressly granted by the legislature.

In the same case we called specific attention to the fact that a "judicial opinion must be read as applicable only to the facts involved, and is authority only for what is actually decided." We are unable to comprehend how appellant derives from the decision of this court in the *Geneseo case* authority for the village of Lombard to do something the authority for which is not granted by the General Assembly.

We should bear in mind that the village of Lombard is not trying to oust the appellee from the streets of its village. It is endeavoring to impose a tax upon the utility. The United States Supreme Court has many times held that the power to exclude does not carry with it the power to impose oppressive or illegal exactions. *Hanover Fire Insurance Co.* v. *Carr*, 272 U.S. 494, 71 L. ed. 372; *Terral* v. *Burke Construction Co.* 257 U.S. 529, 66 L. ed. 352.

There is a prayer in the complaint for a writ of *mandamus* to compel the appellee to make a disclosure of the amount of its gross receipts, which has not been urged or argued in the briefs, perhaps because we have previously held that *mandamus* will not lie for such purpose. *City of Chicago* v. *Chicago Telephone Co.* 230 Ill. 157.

Appellee makes other serious objections to the validity of the ordinance in question, which we do not discuss because it is void for the reasons set out above. *Amici* have filed a brief in support of appellant's position, which we have considered but do not find persuasive. It would unduly prolong this opinion to discuss these matters in view of the fact that the ordinance attempts to collect revenue not based upon any power granted by the General Assembly. We are clearly of the opinion that no power has been granted to municipalities by the General Assembly authorizing the levy of a gross-receipts tax, or to rent the streets of the village for a rental based upon the gross receipts of a utility occupying parts thereof.

The judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*