(Nos. 31517, 31670, 31671.—

THE CITY OF CHICAGO HEIGHTS, Appellant, *vs.* PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS, Appellee.—Same Appellant *vs.* Same Appellee.—Same Appellant, *vs.* WESTERN UNION TELEGRAPH COMPANY, Appellee.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

JOSEPH J. MCGRANE, Corporation Counsel, of Chicago Heights, and RUSSELL & BRIDEWELL, of Chicago, (DAVID A. BRIDEWELL, JOHN A. COOK, HORACE RUSSELL, and MAURINO R. RICHTON, of counsel,) for appellant.

MITCHELL, CONWAY & BANE, of Chicago, (STEPHEN A. MITCHELL, CHARLES A. BANE, CHARLES E. BROWN, and THOMAS J. RUSSELL, of counsel,) for appellee Public Service Company of Northern Illinois; ECKERT, KLEIN, MC-SWAIN & CAMPBELL, of Chicago, and JOHN H. WATERS, of New York, N. Y., (JOHN NEAL CAMPBELL, of counsel,) for appellee The Western Union Telegraph Company.

Per CURIAM: On November 12, 1948, the city of Chicago Heights enacted an ordinance relating to gas mains and to compensation to be paid the city for the use of the streets in which said mains were laid, hereafter referred to as the gas ordinance. The city of Chicago Heights likewise, on February 14, 1949, enacted another ordinance relating to compensation to be paid by utilities for the use of streets, having poles therein or wires overhead, hereafter referred to as the electric ordinance.

Separate suits were brought in the superior court of Cook County by the city of Chicago Heights against Public Service Company of Northern Illinois, hereafter referred to as Public Service, and against the Western Union Telegraph Company, hereafter referred to as Western Union, to enforce the provisions of these ordinances. A separate count in cause No. 31517 against Public Service attempted to vacate a judgment obtained by it against the city of Chicago Heights on August 20, 1933. Motions to dismiss or strike these cases were made in the superior court, and, after hearing in each instance allowed by the court, said causes were dismissed. Certificates were made by the trial court that the validity of an ordinance was involved and that the public interest required that appeals be taken directly to the Supreme Court. The cases have been consolidated in this court.

The resemblance of the ordinances involved in the present case to that involved in the case of *Village of Lombard* v. *Illinois Bell Telephone Co.* 405 Ill. 209, is so striking that the general provisions of each ordinance should be compared, without setting them forth in detail, to determine the application of that decision. The electric ordinance, enacted on February 14, 1949, makes a general prohibition against maintaining or installing any electric light, telephone, telegraph, or any other type of pole or post, or any electric light, telegraph or telephone, or other type of wires in, upon, across, along or under any street or public place without complying with the ordinance. Section 2 prohibits any poles or wires to be installed without an express consent of the city for such installation. Section 3 provides for the fee to be paid, and requires that to maintain poles, posts and wires across any street, alley, sidewalk, parkway or other public place, such utility shall pay *as compensation for the use of such street, etc.,* an annual fee equal to two per centum of the gross receipts.

The second subdivision of this same ordinance requires an additional fee of two per cent as compensation for the use of space more than twelve feet above the street level. The ordinance then requires a statement of gross receipts to be made by such utilities, and for a failure or neglect to file such statement such utility may be fined not less than $10 nor more than $200 for each offense, and a separate offense shall be deemed committed during each day such violation continues.

The gas ordinance was quite similar in form, except that it provided that a fee of four per cent of gross receipts be paid as compensation for the use of streets, alleys, sidewalks and parkways, by mains, pipes, conduits, etc., by any person, firm or corporation.

The original suit against Public Service, entitled No. 31517 in this court, contained five counts, and made demands under both ordinances. Public Service was in the business of furnishing both gas and electricity. The case against Western Union, No. 31671, comes only under the electric ordinance.

In No. 31517, count 1, after setting forth the provisions of the electric ordinance, prays that the court issue a writ of *mandamus* to compel the company to file statements, as required by such ordinance, and also that judgment be entered for four per cent of the gross revenue for the part of the year 1949 that the ordinance was in effect. Count 2 is a claim for the penalty, only, of $200 per day for each day after the enactment of the ordinance that the defendant fails to comply with the requirements of filing its statement of gross receipts. Separate appeal was taken from the judgment on these counts, since they applied only to demands under the electric ordinance, and is in this court under No. 31670.

Count 3 prays for the writ of *mandamus* and for judgment for four per cent of the gross revenue from the sale

of gas. Count 4 is a claim for a penalty of not less than $10 nor more than $200 per day for the violation of the ordinance, in failing to show the gross amount of sales of gas. A separate appeal was taken from the judgment on these counts, and is here under No. 31517.

Count 5 alleges facts, in which count plaintiff claims that the judgment obtained by Public Service against the city of Chicago Heights in 1933 was collusive and void because it was obtained by fraud when the city was indebted to a greater extent than was permitted under the constitution, and, being illegal and void, was subject to collateral attack. The judgment dismissing this count is appealed with that on counts 1 and 2, and is here as No. 31670.

The suit brought against the Western Union Telegraph Company, No. 31671, is predicated upon the electric ordinance, and seeks the issuance of a writ of *mandamus* or mandatory injunction to compel the Western Union to file statements of its gross receipts, and that judgment be entered for four per cent of the gross revenue for 1949, and for other relief.

The city has filed extensive briefs to support the validity of these ordinances, and in effect reargues the *Village of Lombard case*. The appellees contend that the *Lombard case* is controlling, because the ordinances are almost identical in form, and certainly are in effect, the only difference being in the language used in the respective ordinances to obtain compensation based upon gross receipts for the use of the city streets, and that, since the ordinances are so similar, no distinction can be made between them, and that our holding in the *Lombard case* is therefore controlling. If this contention of appellees be true we will not assume jurisdiction of an appeal merely to refer to former decisions or restate the reasons upon which the prior decisions were based. (*City of Sterling v. Berry*, 367 Ill. 111; *Richter v. City of Mount Carroll*, 398 Ill.

473; *Kinsall* v. *Village of Omaha,* 395 Ill. 399.) We have examined the ordinance in the *Lombard case,* and compared it with the ordinances involved in this case, and can find very little difference between them.

The Lombard ordinance started out by making it illegal to maintain equipment for the transmission of gas, electric current, etc. under any public street, etc. It also provided for a payment for the privilege of maintaining such equipment on the streets by requiring three per cent of the gross receipts of such utility; and likewise provided that for a failure to make the reports, or for a violation of the ordinance the offending corporation should be fined not less than $10 nor more than $200 for each day it failed to comply with the ordinance, and the suit was based upon the failure to make reports, as required by the ordinance. Appellant claims there is a distinction between the ordinances in the purpose of requiring the fee, and we will therefore compare the language used in each ordinance to see what, if any, difference there is between them.

The Lombard ordinance provided as follows: "each person, firm or corporation maintaining any pipes, conduits, cables, poles or wires in or under any public place shall *pay to the village for the privilege of so maintaining such equipment* a sum equivalent to 3 per cent of the gross receipts." The provision of the electric ordinance in the Chicago Heights case, relating to the same matter, is as follows: "each person, firm or corporation using or maintaining any such poles, posts or wires in, upon, across, along or under any such street, alley, sidewalk, parkway or other public place, *shall pay to the City Treasurer as compensation for use of such street,* alley, sidewalk, parkway or other public place, an annual fee which shall be equal to two percentum (2%) of the gross receipts of said companies, * * *." The second portion of this ordinance makes the same provision, in like language, for space more than twelve feet above the level of the street, at the rate

of two per cent of gross receipts, making together a total of four per cent. The gas ordinance provides: "each person, firm or corporation, using or maintaining any such pipes, mains or conduits in or under any such street, alley, sidewalk, parkway or other public place *shall pay to the City as compensation for the use of said streets,* alleys, sidewalks, parkways or other public places a fee which shall be equal to four per centum on the gross receipts of said company."

From this recital is can be perceived that the only difference between the ordinances of the city of Chicago Heights and of the village of Lombard, involved in 405 Ill. 209, is in the language fixing the compensation for the use of the streets. The Lombard ordinance required each person maintaining poles, etc., *shall pay* to the village for the privilege of so *maintaining such equipment,* while the Chicago Heights ordinance says each person *maintaining poles,* etc., in any street *shall pay* to the city, *as compensation* for the use of said street, a fee. And, narrowing the distinction down a little more, in the one instance (in Lombard,) utilities were charged for the *privilege* of *maintaining equipment* in the streets, and, in the case of Chicago Heights, utilities are required to pay compensation for *maintaining equipment* in the streets. We are unable to see any practical distinction between the ordinances. Call it what you will, the utility is charged for having poles in the street or highway, in the air, or conduits in the ground, based upon its gross receipts, and whether you call it a payment for the privilege of occupying a portion of the street, or a compensation for the use of the street, in either event it is the occupancy of the street which is the subject matter of the charge.

It is unnecessary for us to repeat what we said in the *Lombard case.* We there pointed out the general nature of the power of cities to tax, and the type of taxes authorized and permitted by article IX of the State constitution. We

also called attention to the well-established principle that a municipal corporation has no inherent power of its own, and that such powers are wholly acquired by grant from the General Assembly, and that no grant of power had been made by the General Assembly permitting cities to charge for the use of streets, or for exacting a privilege tax based upon the gross revenue of a taxpayer using the streets.

We likewise specifically held that the city had no power to rent the streets, and held *mandamus* was not a proper remedy to compel the observance of an ordinance. In the *Lombard case* the village went further and tried to justify the imposition of such a tax based upon the case of *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506, and we took pains to point out how that case was not pertinent to the issues because no question of power to tax was involved, but only the right, under certain circumstances, to oust the utility from the street. That is the situation here. So far as the pleadings disclose, no effort was made by the city of Chicago Heights to oust either of these utilities from the use of its streets, or the exercise of its corporate franchises within the city.

In the Public Service case a number of recitals are made as to prior ordinances and prior contracts between the city of Chicago Heights and Public Service, which have no relevancy here, as the sole issue in this case is the validity of an ordinance requiring compensation for the use of a street, or a charge for the privilege of placing poles in the street, based upon the gross receipts of the utilities so using the same. We have passed squarely upon that proposition in the *Lombard case,* and we see no good purpose in reiterating here what was said there. And, we might further remark, while under similar situations we have considered it proper to dismiss an appeal which involves a constitutional question fully and finally decided, this case was in the course of hearing, prior to our decision in the *Lombard*

*case,* and judgment rendered on part of it before the opinion, and we will refrain from exercising that undoubted power in the instant case, but the principle still remains applicable if other cases should arise where the same point is involved.

We draw attention to another feature of these ordinances, not discussed to any great extent, but going to the validity of a tax or charge based on gross receipts, and that is that the tax or fee imposed upon the appellees in this case, and particularly Western Union, is based upon the gross receipts received, although all Western Union has in the streets consists of poles and wires at an elevation in excess of twelve feet from the ground. It must be at once seen that a fee or imposition based upon gross receipts has no relation to the amount of space in a street used by wires or poles of a given company. One company may be engaged in an enterprise in which the product sold is exceedingly valuable, and a small amount of space will produce a large amount of gross revenue, while another company may have a larger number of poles and wires, and produce a comparatively small revenue; so, in the instance of charging the one who uses the lesser space more than the one who uses a very large amount of space, by using the gross receipts as a measure of value, it is wholly lacking in uniformity, and is purely arbitrary and discriminatory in its nature.

We think the ordinances involved in this case are subject to the same criticism. It is our judgment and opinion that both of the ordinances of the city of Chicago Heights, involved in the present case, are invalid and unenforcible for the reasons set forth with more particularity in the case of *Village of Lombard* v. *Illinois Bell Telephone Co.* 405 Ill. 209.

The remaining question in this case is whether the court committed error in refusing to vacate the judgment against the city of Chicago Heights, entered on August 20, 1933,

in the sum of $28,237.36. A motion to transfer this particular branch of the case has been made upon the ground that it does not involve a constitutional question. However, appellant claims it does involve a constitutional question in that the complaint charges that the city of Chicago Heights was indebted in excess of its constitutional limit at the time the judgment was entered, and that therefore a valid judgment could not be obtained for that reason.

Examination of count 5 discloses that it is based upon the claim that the judgment was obtained by fraud and collusion between the city officials and Public Service. It is claimed that while the fraud is constructive because the city officials were bound to know of the constitutional limitation of indebtedness as applied to cities and of the requirement that a previous appropriation must be made to authorize the expenditure of money, thus permitting judgment against the city without raising these points, it still constituted fraud, and as such rendered the judgment wholly void, and subject to collateral attack.

The motion to dismiss is based upon the proposition that the complaint does not state a cause of action, and the order of the court in dismissing the cause of action specified in count 5 does not disclose whether it is based upon a failure of the count to disclose a cause of action, or because of lapse of time, nor is any reason given, and certainly nothing is in the order which discloses that the court has passed upon a constitutional question claimed to be involved in this case. We have many times decided this question. In the recent case of *People ex rel. Trust Co.* v. *Holleb,* 402 Ill. 594, we said: "The order of the chancellor sustaining the motion to dismiss makes no specific finding on any issue raised by the motion. It merely refers to the motion and recites that the court having heard the arguments thereon, and being fully advised in the premises, finds that the motion to strike is well founded and orders that the amended and supplemental complaint be stricken."

An almost identical order was entered in the present case. In the *Holleb case* we called attention to numerous decisions as to the requirements necessary to raise a constitutional question. Such an issue must be presented directly to the court, the court must pass upon it, and the order of the court must show that it has been passed upon. Nothing in the instant case indicates that the trial court decided any constitutional question, and certainly the mere charge that a judgment is void because it is obtained through fraud and collusion does not raise a constitutional issue. We deem it unnecessary to repeat all we have said upon this proposition, but merely call attention to other cases, wherein we have refused to take jurisdiction because the constitutional question was not properly before us. *Grutzius* v. *Armour and Co.* 377 Ill. 447; *Shilvock* v. *Retirement Board,* 375 Ill. 68; *Ernhart* v. *Elgin, Joliet and Eastern Railway Co.* 399 Ill. 512; *Akouris* v. *Village of Oak Lawn,* 389 Ill. 582; *Chicago Bar Ass'n* v. *Kellogg,* 401 Ill. 375.

No constitutional question was presented or decided by the judgment of the trial court upon count 5 of cause No. 31670. The certificate of the trial court that the validity of an ordinance is involved does not affect count 5, as the cause of action in this count is based upon alleged fraud and collusion. It, therefore, presents a case entirely separable from the other counts in the complaint. Under these circumstances, we have held it is not only proper, but necessary, to transfer to the Appellate Court a separate cause of action of which we do not have jurisdiction. (*Thorp* v. *Board of Education,* 404 Ill. 588.) In view of the foregoing, it is our opinion that the cause of action involved in count 5 of cause No. 31670 should be transferred to the Appellate Court for the First District.

It is the judgment of this court that the order, judgment and decree of the superior court of Cook County in causes Nos. 31517 and 31671 should be, and the same are, affirmed in all respects. It is also the judgment of this

court that the order, judgment and decree of the superior court of Cook County in cause No. 31670, as to counts 1, 2, 3 and 4 is affirmed in all respects, and that the cause of action designated in count 5 of cause No. 31670 be and the same is transferred to the Appellate Court for the First District.

*Affirmed in part, and transferred in part.*