(No. 34260.—

THE CITY OF PEORIA, Appellee, *vs.* PEORIA TRANSIT LINES, INC., Appellant.

*Opinion filed May 23, 1957—Rehearing denied September 16, 1957.*

CASSIDY & CASSIDY, of Peoria, for appellant.

MAX J. LIPKIN, of Peoria, for appellee.

LATHAM CASTLE, Attorney General, (HARRY R. BEG-LEY, of counsel,) for the Illinois Commerce Commission, *amicus curiae*.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court of Peoria County entered a summary judgment for $41,707.03 in favor of the city of Peoria and against Peoria Transit Lines, Inc. The judgment was based on defendant's failure to pay amounts alleged to be due under a franchise ordinance. The validity of the ordinance is challenged on constitutional grounds, and this court has jurisdiction on direct appeal.

The ordinance was adopted in 1946. It granted the defendant the exclusive right to operate a motor bus system on the streets of the city, and it provided that the defendant should pay to the city, "as compensation for the use by the Company of the streets of the City and for the exercise by the Company of the rights and privileges hereby granted to it, a percentage [basically 2½%] of the gross

revenue derived by the Company from the fares collected by it * * *."

Defendant accepted the terms of the ordinance and paid the compensation specified from the time it commenced operations in 1946 until January 1, 1954. It made no payments from that date until it ceased to do business and transferred its assets to another company on May 4, 1955. Judgment was entered for the amount that became due under the terms of the ordinance during this period, plus interest.

Defendant attacks the validity of the ordinance on many grounds, contending that it cannot be sustained either under the city's regulatory power or its taxing power. We find it unnecessary to consider or to discuss the validity of the ordinance as a revenue measure, for we are of the opinion that it is a valid exercise of the city's regulatory powers, particularly under the following grants of authority: "to regulate the use of the streets * * *," and "to license, tax, and regulate hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen, and all others pursuing like occupations, and to prescribe their compensation." Ill. Rev. Stat. 1955, chap. 24, pars. 23—10, 23—51.

The present ordinance is a typical public utility franchise ordinance. Defendant's attack upon it is based primarily on *Chicago Motor Coach Co.* v. *City of Chicago,* 337 Ill. 200. That case involved the power of the city to prohibit the operation of the company's busses. It has been regarded as holding (1) that the Public Utilities Act had so occupied the field as to repeal the right of a municipality to grant or deny permission to utilities to use its streets, and (2) that the municipality had no power to prohibit the operation of a bus service upon its streets because "automotive vehicles" were "lawful means of conveyance" and had "equal rights upon the streets with horses and carriages." (See: *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506, 518.)

The first of these propositions was expressly overruled in the *City of Geneseo case*. The second does not concern us, for unlike the *Motor Coach case* the city's effort here was to regulate and not to prohibit.

Unquestionably the city had power to regulate. That power was expressly recognized in the *Motor Coach case*, except as it was thought to have been repealed by implication by the Public Utilities Act. In that case the court said, "Under the powers granted to city councils by the various clauses of section 1 of article 5 of the Cities and Villages Act, the city of Chicago, and many other cities and villages in the State, prior to the going into effect of the Public Utilities Act of 1913, (Laws of 1913, p. 459,) which became effective on January 1, 1914, properly enacted many ordinances providing rules for the regulation of public utilities and from time to time amended and changed such rules. The ordinances were authorized by the legislature and compliance with them by the public utilities was required by the courts." (337 Ill. at 207.) Since it is the city's power to regulate that is here involved, defendant's argument that because the city lacked the power to prohibit the operation of its busses there was no consideration for its undertakings is wide of the mark. *People ex rel. Hoyne v. Chicago Motor Bus Co.* 295 Ill. 486.

On the authority of *Village of Lombard v. Illinois Bell Telephone Co.* 405 Ill. 209, and *City of Chicago Heights v. Public Service Co.* 408 Ill. 310, defendant argues that the ordinance is invalid because the city lacks the power to require it to pay a percentage of its gross receipts. Neither of those cases involved a franchise ordinance that had been accepted by the utility. Each ordinance was regarded by the court as a revenue ordinance, and authority to tax the activities there involved had not been granted to the municipalities. Cf. Ill. Rev. Stat. 1955, chap. 24, par. 23—21 with par. 23—51.

In *City of Chicago Heights* v. *Public Service Co.* 408 Ill. 310, 318, it was also pointed out that a tax or fee based on gross receipts, when applied to a telegraph company, bore no relation to the amount of space in the streets occupied by the utility, and so was arbitrary and discriminatory. That argument is not available here, for in the case of a company operating moving vehicles on the streets, it is not unreasonable to assume a direct correlation between gross receipts from fares and the intensity of use of the streets. Neither the pleadings nor the proof in the present case suggest that the amount charged exceeded the cost of regulation, and in any case the amount charged was that to which the defendant had agreed.

The provision of the ordinance that exempts the company from other license fees and vehicles taxes, and that which provides for arbitration of the amount of compensation at five-year intervals, are also attacked. As to the former, it is difficult to see how the defendant has been injured by the provision that it now attacks. Moreover, as to both provisions we are of the opinion that the defendant is estopped to urge the objections it now raises by reason of its acceptance of the ordinance. *Chicago General Railway Co.* v. *City of Chicago,* 176 Ill. 253; *People ex rel. Jackson* v. *Suburban Railroad Co.* 178 Ill. 594; *Commonwealth Electric Co.* v. *Rose,* 214 Ill. 545.

By the ordinance the city agreed to place the money paid by the defendant as compensation into a special "Street Improvement Fund" which would be used solely for street repair and maintenance. The city did not do so, and the defendant contends that because the city has itself breached the ordinance it cannot recover. During the period from September, 1946, to January, 1954, defendant paid $267,216.66 to the city as compensation under the ordinance. During this period the city spent annually between $500,000 and $1,000,000 for street repair and maintenance. It does not appear that the defendant ever complained of

the city's failure to establish a special fund until this action was filed. Under these circumstances, the breach does not appear to have been material, and in any case it has been waived by defendant's continued performance without insisting on strict compliance with the ordinance.

The judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*